1998 ND 50

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Brian OLANDER, Defendant and Appellant.**

**Criminal No. 970273.**

Supreme Court of North Dakota.

March 5, 1998.

John J. Mahoney (argued), State's Attorney, Center, for plaintiff and appellee.

Nancy Hollander (argued), of Freedman, Boyd, Daniels, Hollander, Guttman & Goldberg, P.C., Albuquerque, NM, and Thomas M. Tuntland (appearance), Mandan, for defendant and appellant.

MESCHKE, Justice.

[¶ 1] Brian Olander appealed a jury conviction finding him guilty of manslaughter for the death of Nick Bullinger. We hold the trial court's failure to instruct the jury that the State had the burden of proving beyond a reasonable doubt Olander did not act in self-defense was obvious error. We reverse and remand for a new trial.

[¶ 2] Olander and Bullinger owned adjoining tracts of land in Oliver County for several years, but boundary disputes created antagonism between them. Near 9 p.m. on August 16, 1996, Olander and Bullinger met while driving opposite directions on a rural road in Oliver County. Bullinger was accompanied by his wife, Carol. Olander was alone.

[¶ 3] According to Olander, Bullinger made an obscene gesture while passing him, and they both stopped their vehicles and exchanged words. Olander testified the confrontation escalated into a fight when Bullinger punched him and held him in a "choke position." According to Olander, he was losing consciousness from the choke hold when he heard Carol scream she was "going to get something to stop this." Olander testified he then felt a release on the choke hold, and he hit Bullinger but did not remember choking him. Olander testified he left the scene as another vehicle approached.

[¶ 4] According to Carol, Olander and Bullinger initially exchanged words from their vehicles. Carol testified Olander walked over to the Bullinger vehicle and told her he "would expect better things from your husband than this." According to Carol, the two men continued to exchange words until Olander said, "well, we can settle it right here," and Bullinger got out of his vehicle. Carol testified she remained in the passenger seat of the Bullingers' vehicle, and she saw punches exchanged but did not see who

threw the first punch. She testified she got out of their vehicle and saw Olander choking Bullinger. According to Carol, she unsuccessfully tried to pull Olander off of her husband. Carol also testified Olander left the scene as another vehicle approached.

[¶ 5] Bullinger suffered a heart condition and had had open-heart surgery in 1994. He died from the fight with Olander. Bullinger's death certificate listed strangulation as the primary cause of death and heart disease as a significant contributing factor.

[¶ 6] The State charged Olander with murder under NDCC 12.1–16–01(1)(b) for willfully causing the death of Bullinger under circumstances manifesting extreme indifference to the value of human life. The trial court instructed the jury on the elements of murder, manslaughter, negligent homicide, self-defense, and excuse, but did not identify nonexistence of self-defense as an essential element of murder, manslaughter, or negligent homicide. The court also instructed the jury the State must prove the essential elements of each charge beyond a reasonable doubt, but the court did not specifically instruct the jury that the State was required to prove beyond a reasonable doubt Olander did not act in self-defense. A jury convicted Olander of manslaughter, and he appealed.

[¶ 7] Olander argues that, once the trial court decided the evidence warranted a self-defense instruction, the court erred in not instructing the jury the State had the burden of proving beyond a reasonable doubt he did not act in self-defense.

■ [¶ 8] We begin by considering whether Olander preserved this issue for review. Before trial, Olander submitted to the court a written list of requested jury instructions, including NDJI—Criminal 2030.[1] He also submitted a brief with an attached copy of our decision in *State v. McIntyre*, 488 N.W.2d 612 (N.D.1992), that he argues requires an instruction on the State's burden of proving beyond a reasonable doubt he did not act in self-defense. After receiving a copy of the court's proposed closing instructions, however, Olander did not object at a charging conference on jury instructions to the court's failure to instruct the jury on the State's burden of proving lack of self-defense. Olander nevertheless argues he adequately preserved this issue for review by requesting NDJI—Criminal 2030 and filing a pretrial brief with an attached copy of *McIntyre*. We disagree.

[¶ 9] N.D.R.Crim.P. 30 describes the procedure for requesting and objecting to jury instructions.[2] Under N.D.R.Crim.P. 30(c), if the court gives counsel an opportunity to object to proposed instructions, counsel must designate the omissions of instructions that are objectionable and thereafter only the

1. NDJI—Criminal 2030 says:
   Evidence has been presented that the defendant [set out the defense]. The state must prove beyond a reasonable doubt, as an additional element of the offense charged, that the defendant was not [set out the defense]. The defendant does not have the burden of proof as to this defense. If the state has failed to prove beyond a reasonable doubt that the defendant did not [set out defense], the defendant is entitled to a verdict of not guilty.

2. N.D.R.Crim.P. 30 directs, in part:
   *(b) Requested Instructions.* At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court may require that each instruction be written on a separate sheet, provided that North Dakota pattern jury instructions may be requested by reference to instruction number only. The court shall inform counsel in writing of its action upon requested instructions prior to their argument to the jury. All instructions given by the court to the jurors must be read or given to them orally by the court without disclosing whether the instructions were requested.
   *(c) Exceptions to Instructions.* The giving of instructions and the failure to instruct the jurors are deemed excepted to unless the court, before instructing the jurors, submits to counsel the written instructions it proposes to give to the jurors and asks for exceptions to be noted. Thereupon, counsel shall designate the parts or omissions of the instructions as that counsel considers objectionable. Thereafter, only the parts or omissions so designated are deemed excepted to by the counsel designating the same. All proceedings connected with the taking of exceptions must be in the absence of the jurors and a reasonably sufficient time must be allowed counsel to take exceptions and to note them in the record of the proceedings.

omissions so designated are deemed excepted to by counsel.

■ [¶ 10] To illustrate, in *State v. McNair*, 491 N.W.2d 397, 399 (N.D.1992), the accused submitted to the trial court a requested instruction on the elements of attempted escape. The court did not give the requested instruction and, when given an opportunity, the accused did not object under N.D.R.Crim.P. 30(c) to the court's instruction on the elements of the offense. On appeal in *McNair*, 491 N.W.2d at 399, we limited our review of the court's failure to give the requested instruction to obvious error:

> An attorney's failure to object at trial to instructions, when given the opportunity, operates as a waiver of the right to complain on appeal of instructions that either were or were not given. *State v. Johnson*, 379 N.W.2d 291, 292 (N.D.), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1792, 90 L.Ed.2d 337 (1986); Rule 30(c), N.D.R.Crim.P. To preserve a challenge to a jury instruction, an attorney must except specifically to the contested instruction, regardless of whether the attorney proposed another instruction on the same issue. *See Andrews v. O'Hearn*, 387 N.W.2d 716, 728 (N.D.1986), and *Matter of Estate of Honerud*, 294 N.W.2d 619, 622 (N.D.1980), construing Rule 51(c), N.D.R.Civ.P., which is identical to Rule 30(c), N.D.R.Crim.P.

Under N.D.R.Crim.P. 30, to preserve an appellate challenge to a jury instruction, a party must specifically object to a trial court's proposed instruction when the court asks for exceptions to be made.[3]

[¶ 11] Here, Olander submitted a list of proposed instructions, including NDJI—Criminal 2030, and a pretrial brief with an attached copy of *McIntyre*. Olander's brief, however, cited *McIntyre* for the admissibility of evidence of a victim's character, and his brief did not specifically address the State's burden of proving beyond a reasonable doubt Olander did not act in self-defense. *See State v. Mehralian*, 301 N.W.2d 409, 416 (N.D.1981) (to preserve it for appeal, an issue must be raised in trial court so court can intelligently rule on it). More importantly, however, when the trial court asked for exceptions to its proposed instructions during a charging conference, Olander did not object to the court's failure to instruct the jury that the State had the burden of proving beyond a reasonable doubt he did not act in self-defense. We hold Olander failed to adequately preserve this issue for review under N.D.R.Crim.P. 30(c), and our inquiry is therefore limited under N.D.R.Crim.P. 52(b) to whether the court's failure to instruct the jury on this issue was obvious error affecting substantial rights.[4]

■ [¶ 12] We exercise our power to notice obvious error cautiously and only in exceptional circumstances where the accused has suffered serious injustice. *State v. Keller*, 550 N.W.2d 411, 412 (N.D.1996); *State v. Woehlhoff*, 540 N.W.2d 162, 164 (N.D.1995); *McNair*, 491 N.W.2d at 399. In analyzing

---

3. Although N.D.R.Crim.P. 30 is not derived from the corresponding federal rule, *see State v. Lamb*, 541 N.W.2d 457, 461 (N.D.1996), our rule and the federal rule each contain a similar procedure for objecting to jury instructions. F.R.Crim.P. 30 directs:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to all parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The court may instruct the jury before or after the arguments are completed or at both times. No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which

that party objects and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

> To preserve an objection to jury instructions under F.R.Crim.P. 30, a party must distinctly state the ground for objection to the court's instructions, even if that party has previously submitted a proposed instruction on the issue. *See*, for one example, *United States v. Hoelscher*, 914 F.2d 1527, 1534 (8th Cir.1990). *See generally* 26 Moore's Federal Practice (3rd ed.1997) § 630.13[4].

4. Olander has made no argument under N.D.R.Crim.P. 30(b) about the trial court's failure to "inform counsel in writing of its action upon requested instructions prior to their argument to the jury."

obvious error, our decisions require examination of the entire record and the probable effect of the alleged error in light of all the evidence. *See Woehlhoff,* 540 N.W.2d at 165. We have rarely noticed obvious error under N.D.R.Crim.P. 52(b). *See State v. Kraft,* 413 N.W.2d 303, 307 (N.D.1987) (failure to instruct on UCC defense was obvious error); *State v. Hersch,* 445 N.W.2d 626, 634 (N.D. 1989) (failure to instruct on statute of limitations defense was obvious error); *State v. Wiedrich,* 460 N.W.2d 680, 685 (N.D.1990) (in homicide case with self-defense evidence, prejudicial effect of trial court's failure to instruct on included offense of negligent homicide was obvious).

[¶ 13] In *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court described the framework for analyzing "plain error" under F.R.Crim.P. 52(b). Our rule differs from the federal rule only in the substitution of the word "obvious" for "plain." *See* N.D.R.Crim.P. 52, Explanatory Note. The *Olano* analysis is largely consistent with our cautious application of N.D.R.Crim.P. 52(b). Therefore, we use the *Olano* framework for our analysis of obvious error in this case.

[¶ 14] Before an appellate court may notice a claimed error that was not brought to the attention of a trial court, *Olano* requires (1) error, (2) that is plain, and (3) affects substantial rights. 507 U.S. at 732–35, 113 S.Ct. at 1776–78. Under *Olano* at 732–33, 113 S.Ct. at 1776–77, a forfeited deviation from an applicable legal rule is an "error." Forfeiture is the failure to timely assert a right, while waiver is the intentional relinquishment of a right, and F.R.Crim.P. 52(b) applies only to "forfeited" and not to "waived" errors. *Id.Compare State v. Frey,* 441 N.W.2d 668, 670–71 (N.D.1989) (a defendant who, as a matter of trial tactics, objects to giving instructions on lessor included offenses cannot complain the court committed obvious error in failing to give those instructions). *Olano,* 507 U.S. at 734, 113 S.Ct. at 1777, defines "plain" error as "clear" or "obvious" error, and clarifies that an appellate court should not correct an error unless there is a clear deviation from an applicable legal rule under current law. *See Johnson v.*

*United States,* 520 U.S. 461, ——, 117 S.Ct. 1544, 1546–47, 137 L.Ed.2d 718, 727–28 (1997) (explaining that whether an error is "plain" or "obvious" depends on the state of the law when appeal taken).

[¶ 15] Under *Olano,* 507 U.S. at 734–35, 113 S.Ct. at 1777–78, a clear or obvious deviation from an applicable legal rule also must affect "substantial rights," that is, it must have been prejudicial, or affected the outcome of the proceeding. *Olano,* 507 U.S. at 734–35, 113 S.Ct. at 1777–78, explains that the "substantial rights" inquiry of F.R.Crim.P. 52(b) requires an analysis similar to the harmless error review of F.R.Crim.P. 52(a), except subsection (b) places the burden on the accused to show the error was prejudicial.

[¶ 16] Under the *Olano* framework, once an accused establishes a forfeited plain error does affect substantial rights, an appellate court has discretion to correct the error and should correct it if it " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Olano,* 507 U.S. at 736, 113 S.Ct. at 1779, *quoting United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). As *Olano,* 507 U.S. at 736–37, 113 S.Ct. at 1778–79, explains, a forfeited plain error may seriously affect the fairness, integrity, or public reputation of judicial proceedings regardless of the accused's actual innocence.

[¶ 17] In *Olano,* 507 U.S. at 741, 113 S.Ct. at 1781–82, the Court held the presence of alternate jurors during jury deliberations was not an error an appellate court was authorized to correct under F.R.Crim.P. 52(b), because the defendants failed to satisfy their burden of showing prejudice. In *Johnson,* 520 U.S. at ——, 117 S.Ct. at 1550, 137 L.Ed.2d at 729, the Court, in a perjury prosecution, held a decision by a trial judge, rather than the jury, that a statement was "material" was not a plain error an appellate court could properly notice under F.R.Crim.P. 52(b). The Court decided, because materiality was uncontroverted at trial, the failure to notice the error would not seriously affect the fairness, integrity or public reputation of the judicial proceeding. In-

stead, *Johnson*, 520 U.S. at ——, 117 S.Ct. at 1550, 137 L.Ed.2d at 729, explained that reversing a conviction under those circumstances would seriously affect the fairness, integrity or public reputation of judicial proceedings.

[¶ 18] We apply the *Olano* framework to our review of the trial court's failure to specifically instruct the jury on the State's burden of proof on nonexistence of self-defense. Jury instructions must correctly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. *State v. Smaage*, 547 N.W.2d 916, 921 (N.D.1996). We review jury instructions as a whole and, if the instructions, as a whole, correctly advise the jury on the law, they are sufficient although part of the instructions, standing alone, may be insufficient or erroneous. *Woehlhoff*, 540 N.W.2d at 164. A trial court is not required to instruct the jury in the exact language sought by a party if the court's instructions adequately and correctly inform the jury of the applicable law. *State v. Carlson*, 1997 ND 7, ¶ 16, 559 N.W.2d 802. Here, the trial court's instructions, as a whole, did not inform the jury on the State's burden of proof on nonexistence of self-defense—an essential element of the crime under North Dakota law.

[¶ 19] Due process protects an accused from conviction except upon proof beyond a reasonable doubt of every element of the offense. *State v. Schneider*, 550 N.W.2d 405, 407 (N.D.1996); *State v. Vogel*, 467 N.W.2d 86, 89 (N.D.1991). In *Martin v. Ohio*, 480 U.S. 228, 237, 107 S.Ct. 1098, 1103, 94 L.Ed.2d 267 (1987), the Supreme Court held due process does not preclude a state from placing the burden of proving self-defense on an accused.

[¶ 20] Under North Dakota law, though, the State must prove beyond a reasonable doubt each element of a charged offense, and "[e]lement of an offense" means "[t]he nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue." NDCC 12.1–01–03(1)(e). A defendant must prove an "affirmative defense" by a preponderance of evidence. NDCC 12.1–01–03(3).

Our statutes designate self-defense as a "defense" and not an "affirmative defense." *State v. White*, 390 N.W.2d 43, 45 n. 1 (N.D. 1986). An accused is entitled to a jury instruction on a defense if there is evidence that creates a reasonable doubt about it. *McIntyre*, 488 N.W.2d at 614. Under North Dakota law, if there is evidence to support a self-defense claim, the accused is entitled to an instruction on it, and the State must prove beyond a reasonable doubt the accused did not act in self-defense.

[¶ 21] In *McIntyre*, 488 N.W.2d at 614–15, we reversed a defendant's assault conviction against an arresting police officer, because the trial court's instructions on the burden of proof for self-defense and excuse erroneously instructed the jury it must decide if the defendant had presented sufficient evidence to raise a reasonable doubt on those issues. We concluded the instructions were erroneous because the trial court, not the jury, must initially decide whether there is sufficient evidence to raise self-defense and excuse. *Id.* at 614. We said the instructions may have confused and misled the jury into believing the defendant had the burden of proving self-defense and excuse beyond a reasonable doubt. *Id.* at 615. In *McIntyre*, 488 N.W.2d at 615, we said the defendant's requested instruction based upon NDJI–Criminal 2030 had not included that objectionable language.

[¶ 22] Although *McIntyre* did not decide the precise question raised here, it plainly prescribes an instruction on the State's burden of proof to negate self-defense. Other courts have concluded that, when the evidence requires an instruction on self-defense, the accused is entitled to an instruction the State must prove beyond a reasonable doubt the accused did not act in self-defense. *See Government of Virgin Islands v. Smith*, 949 F.2d 677, 680 (3rd Cir.1991); *United States v. Jackson*, 569 F.2d 1003, 1008, n. 12 (7th Cir.1978); *United States v. Corrigan*, 548 F.2d 879, 883 (10th Cir.1977). Under NDCC 12.1–01–03 and *McIntyre*, if there is enough evidence of self-defense for an instruction on it, an accused is entitled to an instruction to the jury that the State must prove beyond a reasonable doubt the accused did not act in

self-defense as an element of the offense. Nothing in these jury instructions, when read as a whole, informed the jury about the State's burden of proof on nonexistence of self-defense. We conclude the trial court's failure to instruct the jury was a forfeited deviation from our well-established law of self-defense. We therefore hold the trial court's failure to instruct on this issue was obvious error.

[¶ 23] We also conclude Olander has established this error affected his substantial rights. The court's instructions, when considered as a whole, did not instruct the jury the State had the burden of proving beyond a reasonable doubt Olander did not act in self-defense. Although the court instructed "[t]he State must prove all of the essential elements of the crime charged beyond a reasonable doubt," it did not list "lack of self-defense" in the essential elements of the charged crime or lesser included crimes.

[¶ 24] In considering whether a trial court's failure to specifically instruct the jury on the State's burden of proving the nonexistence of self-defense is obvious error, some appellate courts have held the error is obvious if the court's remaining instructions did not inform the jury about that burden of proof and could have led the jury to conclude the burden was on the defendant. *See Smith*, 949 F.2d at 686; *Raines v. State*, 79 Hawai'i 219, 900 P.2d 1286, 1291–93 (1995); *People v. Lowe*, 152 Ill.App.3d 508, 105 Ill. Dec. 670, 672–73, 504 N.E.2d 955, 957–58 (1987). Some courts, however, have held a trial court's failure to specifically instruct the jury that the State's burden of self-defense is not obvious error if the court's remaining instructions informed the jury the State always had the burden of proof, or the defendant was not required to prove anything. *Jackson*, 569 F.2d at 1010–11; *Tichnell v. State*, 287 Md. 695, 415 A.2d 830, 840 (1980); *State v. Kutchara*, 350 N.W.2d 924, 927–28 (Minn.1984); *State v. Branch*, 301 N.J.Super. 307, 693 A.2d 1272, 1281–82, *cert. granted*, 151 N.J. 470, 700 A.2d 881 (1997). A trial court's failure to give a burden of proof instruction for self-defense is not per se reversible error. *See Corrigan*, 548 F.2d at 882. The determinative factor in the obvi-ous-error analysis is whether the remaining instructions, as a whole, informed the jury about the State's burden of proof.

[¶ 25] Here, according to Olander, Bullinger was the aggressor, and Olander acted in self-defense. Olander presented medical evidence of abrasions and bruises consistent with his testimony that Bullinger hit and choked him. Although Olander testified he did not remember choking Bullinger, he also testified he was losing consciousness from being choked, and he presented medical evidence a person choked to near unconsciousness may not remember some events. The only other witness to the confrontation, Bullinger's wife Carol, essentially testified Olander did not act in self-defense. Thus, Olander claimed self-defense, and the jury heard conflicting evidence about Olander's confrontation with Bullinger. The court's instructions, however, did not inform the jury about the State's burden of proving beyond a reasonable doubt Olander did not act in self-defense.

[¶ 26] We do not weigh the conflicting evidence about self-defense. Because of that conflicting evidence, however, we believe the absence of an instruction on the burden of proof for that defense prejudiced Olander. *See Wiedrich*, 460 N.W.2d at 685 (in homicide case with self-defense evidence, prejudicial effect of trial court's failure to instruct on included offense of negligent homicide was obvious). Under these circumstances, we conclude Olander satisfied his burden of showing the obvious error affected his substantial rights.

[¶ 27] Finally, we believe the failure to exercise our discretion to correct the obvious error would seriously affect the fairness, integrity, and public reputation of jury criminal trials. Proper instructions about the burden of proof on the elements of a crime implicate fundamental due process. *Smith*, 949 F.2d at 682. Those due process considerations form the foundation of our system of criminal procedure that an accused cannot be convicted of a crime unless the State proves every element of the offense beyond a reasonable doubt. *See Schneider*, 550 N.W.2d at 407; *Vogel*, 467 N.W.2d at 89. Under

North Dakota law, if there is evidence of self-defense, the State must prove, as an element of the offense, that the accused did not act in self-defense. The omission of an instruction on the allocation of the burden of proof for self-defense is magnified because the nonexistence of self-defense is an element of the crime, but was not so listed in the instructions.

▬ [¶ 28] We believe sustaining a conviction without informing the jury about an essential element of the crime would seriously affect the fairness, integrity, and public reputation of our system of criminal justice. As *Olano* explains, an accused's guilt or innocence is not the determinative factor; rather, the fairness and integrity of the proceeding is paramount. On this record, we decline to approve a process that so significantly undermines fundamental due process. *Compare Johnson,* 520 U.S. at ——, 117 S.Ct. at 1550, 137 L.Ed.2d at 729 (reversing conviction where materiality of perjured statement was uncontroverted at trial would seriously affect the fairness, integrity, and public reputation of judicial proceedings). The need for proper instructions on the burden of proof for the elements of a crime justify a limited exception to the general rule requiring a contemporaneous objection to jury instructions at trial. *See Smith,* 949 F.2d at 686. We therefore exercise our discretion and notice this obvious error. We hold Olander is entitled to a new trial with appropriate instructions on the State's burden of proof on nonexistence of self-defense.[5]

[¶ 29] Because we remand for a new trial, we also consider a question that is likely to arise on remand. *See McIntyre,* 488 N.W.2d at 615. Olander asserts the trial court erred in permitting the State to present seven rebuttal witnesses to testify on direct examination about specific acts of good conduct by Bullinger. Olander argues N.D.R.Ev. 404 and 405 permit the State, on direct examination, to introduce evidence of Bullinger's character for peacefulness by reputation or opinion testimony, but do not permit direct

testimony about specific acts of his good conduct.

[¶ 30] The specific requirements for admissibility of evidence of a victim's character are described in N.D.R.Ev. 404(a)(2):

*(a) Character Evidence Generally.* Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

\*   \*   \*   \*   \*   \*

(2) *Character of Victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

[¶ 31] In *McIntyre,* the defendant asserted the trial court erred in refusing to allow him to cross-examine the arresting officer about his history of using excessive force in effectuating arrests. We said, subject to relevancy, N.D.R.Ev. 404(a)(2) generally allows a defendant who raises self-defense in response to assault or homicide charges to introduce evidence of the victim's violent or aggressive character. In *McIntyre,* 488 N.W.2d at 617–18, we concluded evidence of the arresting officer's character for using excessive force was admissible on retrial as circumstantial evidence the officer was the aggressor and the defendant acted in self-defense.

[¶ 32] The procedure for introducing admissible character evidence is given in N.D.R.Ev. 405:

*(a) Reputation or Opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

In *McIntyre,* 488 N.W.2d at 617 (footnote omitted), we outlined this method for offering

---

5. Because Olander was acquitted of murder and found guilty of manslaughter, double jeopardy limits the new trial to manslaughter and lesser

included offenses. *See State v. Meyer,* 494 N.W.2d 364, 366 (N.D.1992).

admissible character evidence under N.D.R.Ev. 405(a):

> The second sentence of this rule allows inquiry into specific instances of conduct during cross-examination, but it must be read in conjunction with the first sentence which allows proof of character only through reputation or opinion testimony. *Klaes v. Scholl,* 375 N.W.2d 671 (Iowa 1985). A witness, who on direct examination has given reputation or opinion testimony about the character of a person, can be asked about specific instances of conduct while being cross-examined. However, inquiry of specific instances cannot be made during cross-examination unless the subject has been raised on direct examination through opinion or reputation testimony. *Klaes v. Scholl, supra;* Fed.Rules Evid.Rule 405, 28 U.S.C.A., Advisory Committee Notes. The rule, by allowing cross-examination about specific instances only after character has been raised on direct, comports with the general rule that the scope of cross-examination is limited to the subject matter of the direct examination (and matters affecting credibility of the witness). Rule 611(b), N.D.R.Ev.; *State v. Buckley,* 325 N.W.2d 169 (N.D.1982).

Relevant character evidence about Bullinger is admissible within the framework of N.D.R.Ev. 404(a)(2) and 405(a).

[¶ 33] Here, Olander did not object to the State's rebuttal evidence about specific acts of Bullinger's good conduct, and there was no obvious error. Yet, since this question is likely to arise on retrial, we point out N.D.R.Ev. 404 and 405 govern the procedure for admitting evidence of Bullinger's character.

[¶ 34] We reverse the conviction and remand for a new trial consistent with this opinion.

[¶ 35] VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MARING, JJ., concur.

