2009 ND 108

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Patrick James GOLDEN, Defendant and Appellee.**

No. 20080301.

Supreme Court of North Dakota.

June 17, 2009.

Kelly A. Dillon, Assistant State's Attorney, Minot, for plaintiff and appellant.

Robert W. Martin, North Dakota Public Defenders' Office, Minot, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] The State appeals a district court order suppressing Patrick James Golden's statements to law enforcement officers as having been taken while he was in custody and without sufficient warnings. We reverse and remand.

I

[¶ 2] The Minot Police Department was investigating a shooting that occurred in Minot on March 8, 2008. Detective Sergeant Nancy Murphy called Golden late in the afternoon of April 15, 2008, asking him to come down to the police station for some questioning. Golden agreed. Sergeant Murphy met Golden in the lobby of the police station upon his arrival after hours and escorted him to an interview room. Prior to beginning the interview, Sergeant Murphy advised Golden he was not under arrest, did not have to answer any questions, and was free to leave at any time. The interview was conducted in an interview room with Sergeant Murphy sitting behind a desk along the east wall and Sergeant David Goodman sitting in a chair directly across from Golden, who sat in a chair closest to the door, which was closed but unlocked. He confessed to his role in the shooting, and left the police station after the interview was over. Golden was charged with reckless endangerment, a class C felony, on May 1, 2008, and was arraigned on May 29, 2008.

[¶ 3] On July 18, 2008, Golden moved to suppress the statements he made during the April 15 interview, citing the lack of *Miranda* warnings. A hearing on the motion was held on August 6, 2008, at which Golden and Detective Goodman testified about the surroundings of the interview. Golden testified that while in the interrogation room, he was sitting to the right of the door and there was nothing between himself and the door. He also testified that he was in the room with two detectives with the door closed and that he did not feel as though he was free to go. According to Detective Goodman, the first room one enters from the outside is a lobby area with glass windows and a door that leads into the main lobby of the police station. He testified that in order to get into the main lobby of the police station, a person must be "buzzed in" during the night, but during the day, a person can just walk in. To leave that area, however, a person need not be "buzzed out" but can

just open the door and walk out. He testified the door from the main lobby into the first room has a knob and the door from the first room out has a crash bar and not a knob.

[¶ 4] The district court granted Golden's motion to suppress, finding that Golden,

> Upon arriving at the station house . . . immediately stepped into a highly secured area. All doors are locked. Access is restricted. All windows are made of bullet proof glass. The only communication possible is via an intercom. . . . Golden could not have left without police assistance.
>
> . . . Other armed police officers were also present. . . . The interrogation room has a desk and three chairs. There are no exterior windows and only a single doorway, that opening into the secured detectives' office.

[¶ 5] The district court also found that the coercive and police-dominated atmosphere was further heightened by the officers' telling Golden he was a liar and they intended to see him face charges that would place him behind bars for 20 years.

[¶ 6] The State appeals, arguing the district court erred in suppressing Golden's statements, because the order is contrary to the manifest weight of the evidence.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–07.

## II

[¶ 8] In reviewing a district court's decision on a motion to suppress, we affirm the decision if "there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D. 1994). The district court's determination regarding whether a suspect is in custody, and therefore entitled to *Miranda* warnings, is a mixed question of fact and law, fully reviewable on appeal. *State v. Sabinash*, 1998 ND 32, ¶ 14, 574 N.W.2d 827.

[¶ 9] "It is well settled that Miranda warnings are required only when the accused is in custody or is otherwise deprived of his freedom of action in a significant way." *Id.*; *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In determining whether a person is subject to custodial interrogation, we examine all circumstances surrounding the interrogation and consider how a reasonable man in the suspect's position would have understood the situation. *State v. Connery*, 441 N.W.2d 651, 654 (N.D.1989); *State v. Conley*, 1998 ND 5, ¶ 13, 574 N.W.2d 569. The subjective views of neither the interviewing officer nor the person being interviewed are determinative. *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

## III

[¶ 10] The State argues the district court erred in suppressing Golden's statements. The issue before us is whether Golden was subject to custodial interrogation on April 15. The parties do not dispute that Golden was being interrogated by the officers at the time he confessed to his role in the shooting. The State, however, argues Golden was not in custody.

[¶ 11] "Custodial interrogation" under *Miranda* does not require an arrest, but includes circumstances in which a rea-

sonable person would not feel free to leave and thus would feel the "restraint on freedom of movement of the degree associated with a formal arrest." *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (citations omitted). The United States Supreme Court has explained that all the circumstances surrounding an interrogation must be examined to determine whether a reasonable person in that position would have thought he was "sitting in the interview room as a matter of choice, free to change his mind and go home...." *Kaupp v. Texas,* 538 U.S. 626, 632, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003); *Keohane,* 516 U.S. at 112, 116 S.Ct. 457.

[¶ 12] Both the United States Supreme Court and this Court have considered cases with fact patterns similar to the present case. In *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the Supreme Court held the defendant was not in custody for *Miranda* purposes. After trying to contact the defendant on three or four occasions with no success, a police officer left him a message asking him to call because the officer wanted to discuss something with him. *Mathiason,* 429 U.S. at 493, 97 S.Ct. 711. When the defendant called the officer, the officer asked whether he could meet him about 5:00 p.m. at the state patrol office. The defendant went to the office and was greeted by the officer in the hallway. The defendant was told he was not under arrest, and the officer told him "that his truthfulness would possibly be considered by the district attorney or judge." *Id.* The officer, within five minutes after the defendant came to the office, falsely told the defendant that his fingerprints were found at the scene of the theft crime. The defendant then confessed. The officer advised the defendant of his *Miranda* rights and took a taped confession, after which the defendant was again told he was not

being arrested at that time. *Id.* at 494, 86 S.Ct. 1602. The Supreme Court stated, "there is no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a 1/2-hour interview respondent did in fact leave the police station without hindrance." *Id.* at 495, 86 S.Ct. 1602. The Supreme Court further stated that the officer's lying to the defendant about having discovered his fingerprints at the scene had nothing to do with whether the defendant was in custody for purposes of the *Miranda* rule. *Id.* at 496, 86 S.Ct. 1602.

[¶ 13] Similarly, in *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), the defendant voluntarily agreed to accompany the police officers to the police station. He was advised that he was not under arrest, and during a conversation with the officers, the defendant made a statement about a murder. After being advised that his statements would be evaluated by the district attorney, the defendant was permitted to return home. *Id.* at 1122, 103 S.Ct. 3517. The United States Supreme Court held that the defendant was not in custody for *Miranda* purposes when he made the statement.

[¶ 14] In *State v. Newnam,* 409 N.W.2d 79 (N.D.1987), the defendant was asked by the police to come to the police station. He was informed that he was not under arrest and that he was free to leave at any time. *Id.* at 81. This Court, concluding there was no indication the questioning took place while the defendant's freedom to depart was restricted in any way, held the defendant's pre-*Miranda* statements "were not made while he was in 'custody or otherwise deprived of his freedom of

action in any significant way.'" *Newnam,* 409 N.W.2d at 83.

■ [¶ 15] That questioning occurred at the police station or in a "coercive environment" is not by itself a requirement for *Miranda* warnings to be given. *United States v. Crawford,* 372 F.3d 1048, 1059 (2004) (citing *Oregon v. Mathiason,* 429 U.S. 492, 494–95, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)). Yet the district court, although it did not expressly state that it considered where the interview took place, focused its analysis on the fact that "[t]wo armed officers placed Golden in a windowless, closed, 8′ by 10′ room located in the deepest bowels of a larger police station house. That station was itself a fortress, with all doors locked tight, bullet proof glass, and no exit except that allowed by the armed officers ... and a station house full of other armed officers." Neither can the fact that the detective told Golden he could face up to 20 years in prison be considered such a restriction on Golden's movement that it amounted to an arrest. The detective's questioning of Golden was similar to the officer's lying to the defendant in *Mathiason*—the intent was probably to persuade Golden to cooperate and tell the truth. The Supreme Court in *Mathiason* specifically stated, "Whatever relevance this fact [the officer's lying about having discovered the defendant's fingerprints at the crime scene] may have to other issues in the case, it has nothing to do with whether respondent was in custody for purposes of the *Miranda* rule." *Oregon v. Mathiason,* 429 U.S. 492, 495–96, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

[¶ 16] We conclude the facts in the record here were insufficient to cause a reasonable person to believe he was not free to terminate the interrogation and leave at any time despite the coercive aspects of the interrogation as found by the district court. Golden went to the police station voluntarily, understanding that questioning would ensue; the officers told him from the beginning that he did not have to answer any questions, that he was not under arrest, and that he was free to leave at any time; he was told he was not going to be arrested that night once again during the interview, right before he confessed; and then, finally, he left the police station after the interview. Therefore, the district court erred in granting the suppression motion. The totality of the circumstances surrounding Golden's interrogation supports the State's position that the district court erred in concluding Golden was in custody for *Miranda* purposes.

## IV

[¶ 17] We reverse the district court order suppressing Golden's statements and remand for further proceedings consistent with this opinion.

[¶ 18] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.