2013 ND 183

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Richard WHITMAN, Defendant and Appellant.**

No. 20120374.

Supreme Court of North Dakota.

Oct. 22, 2013.

See also, 836 N.W.2d 383.

Jessica J. Binder, State's Attorney, Stanton, N.D., for plaintiff and appellee.

Travis W. Finck, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1]   Richard Whitman appeals the trial court's judgment of conviction after a jury found him guilty of two counts of conspiracy to commit murder.   Whitman argues the district court erred in allowing into evidence statements made to law enforcement in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the evidence was insufficient to prove a conspiracy.   Exercising our inherent authority to notice obvious error on our own motion, we reverse the criminal judgment holding the charge of conspiracy to commit murder under N.D.C.C.   §§ 12.1–06–04   and   12.1–16–01(1)(b) is not a cognizable offense.

I

■   [¶ 2]   Whitman and Cody Borner were charged with two counts of conspiracy to commit murder.   The State charged Whitman and Borner with conspiracy to commit murder under N.D.C.C. §§ 12.1–06–04, criminal conspiracy, and 12.1–16–01(1)(b), extreme indifference murder, alleging in the informations the codefendants agreed with each other to "willfully engage in or cause circumstances manifesting extreme indifference to the value of human life."   At the State's request, the criminal information was amended to specify the culpability required to conspire to commit extreme indifference murder includes "knowingly" rather than "willfully."   At the pretrial hearing, neither Whitman, nor Borner objected to the amended criminal information.

[¶ 3]   Both Whitman and Borner were convicted and appealed the trial court's judgment of conviction.   We recently issued an opinion in the *Borner* appeal and that decision impacts our analysis in this case.   *See State v. Borner*, 2013 ND 141, 836 N.W.2d 383.

[¶ 4]   On appeal Borner argued the criminal information was defective because it failed to charge him with an offense.   *Id.* at ¶ 7. Borner also argued the jury instructions failed to correct the defect in the criminal information and inadequately advised the jury of an offense for which he could be found guilty, and the evidence was insufficient to support a finding of guilt because there was no evidence that Borner knowingly agreed to willfully cause the death of any person.   *Id.* This Court held "that the charge of conspiracy to commit murder under N.D.C.C. §§ 12.1–06–04 and 12.1–16–01(1)(b) is not a cognizable offense." *Id.* at ¶ 1. Concluding the conspiracy statute, N.D.C.C. § 12.1–06–04(1), is ambiguous, this Court applied the rules of statutory interpretation.   *Id.* at ¶¶ 9–11 (citing N.D.C.C. § 1–02–39).

[¶ 5]   This Court stated:

> We are persuaded by the reasoning of those courts that conclude conspiracy to commit unintentional murder creates a logical inconsistency because "one cannot agree in advance to accomplish an unintended result."   We conclude conspiracy is a specific intent crime requiring intent to agree and intent to achieve a particular result that is criminal.   Specifically, to find a person guilty of conspiracy to commit murder, the State must prove (1) an intent to agree, (2) an intent to cause death, and (3) an overt act.   Therefore, conspiracy to commit extreme indifference murder, under N.D.C.C. §§ 12.1–06–04 and 12.1–16–01(1)(b), is not a cognizable offense.

*Id.* at ¶ 20 (citations omitted).   Stating we could not "imagine a greater error affecting a defendant's substantial rights than when a defendant is convicted of conduct that is not a criminal offense under our law," our Court concluded this error prejudiced Borner. *Id.* at ¶ 25.   Exercising our discretion to notice obvious error in order

to avoid a serious injustice affecting "the fairness, integrity, and public reputation of criminal jury trials," we reversed the criminal judgment. *Id.*

[¶ 6] Unlike Borner, Whitman did not raise on appeal the issue that the charge of conspiracy to commit murder under N.D.C.C. §§ 12.1–06–04 and 12.1–16–01(1)(b) is not a cognizable offense. Although Whitman failed to raise the issue, we must determine what impact our decision in *Borner* has on his appeal. When an appellant fails to raise an issue on appeal, this Court is guided by the rules of procedure and legal doctrines encompassed in the rules and caselaw.

## II

[¶ 7] Our Court has the "authority to promulgate rules of procedure." N.D. Const. Art. VI, § 3. Our Court also has the authority under N.D.R.App.P. 2, to suspend these rules to expedite our decision or for other good cause.

[¶ 8] Under N.D.R.Crim.P. 52(b), "An obvious error or defect that affects substantial rights may be considered even though it was not brought to the court's attention." Rule 52 applies to both trial and appellate courts. N.D.R.Crim.P. 52, Explanatory Note. This Court has the power to notice obvious error if it is requested by a party or on our own motion. *Id.* This Court's exercise of the power to notice obvious error should be applied cautiously and limited to exceptional circumstances. *Id.* The power to notice obvious error "should be exercised only where a serious injustice has been done to the defendant." *Id.* North Dakota Rule of Criminal Procedure 52(b) differs from Fed. R.Crim.P. 52(b) only in substituting the word "obvious" for "plain." *Id. See also State v. Olander,* 1998 ND 50, ¶ 13, 575 N.W.2d 658.

[¶ 9] The caselaw explaining the scope of Fed.R.Crim.P. 52(b) is consistent with the Explanatory Note accompanying N.D.R.Crim.P. 52(b). "Rule 52(b) is permissive, not mandatory. If the forfeited error is 'plain' and 'affect[s] substantial rights,' the court of appeals has authority to order correction, but is not required to do so." *United States v. Olano,* 507 U.S. 725, 735, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The exercise of the United States Supreme Court's power to notice plain error is limited to error that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 733, 113 S.Ct. 1770. "Both the Supreme Court and the courts of appeals have the power to note plain errors on the record, even though such errors were not raised or were not properly raised by the parties." 2A *Fed. Proc., L.Ed.* § 3:860 (2003) (citations omitted). Federal jurisprudence recognizes the ability of appellate courts to notice plain error even when it was never raised by counsel. 3B Charles Alan Wright & Kenneth A. Graham, Jr., *Federal Practice and Procedure* § 856 (3rd ed.2013) (citing *Silber v. United States,* 370 U.S. 717, 718, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936); *DeRoo v. United States,* 223 F.3d 919, 926–27 (8th Cir.2000); *United States v. Finch,* 998 F.2d 349, 355 (6th Cir.1993); *United States v. Brown,* 508 F.2d 427, 430 (8th Cir.1974); *State v. Baker,* 440 N.W.2d 284, 293 (S.D.1989).)

[¶ 10] The standard that guides the exercise of remedial discretion, articulated in *Atkinson,* was "codified in Federal Rule of Criminal Procedure 52(b)." *Olano,* 507 U.S. at 736, 113 S.Ct. 1770. In *Atkinson,* the United States Supreme Court stated: "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has

been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." 297 U.S. at 160, 56 S.Ct. 391. The North Dakota caselaw is consistent with and incorporates the federal caselaw regarding Rule 52(b). *See Olander*, 1998 ND 50, ¶ 13, 575 N.W.2d 658.

[¶ 11] We conclude we must invoke our discretion to notice obvious error on our own motion. Under *Borner*, "A charge of conspiracy to commit murder requires proof the defendant intended to agree and intended to achieve a particular result that is criminal." 2013 ND 141, ¶ 24, 836 N.W.2d 383. "Specifically, to find a person guilty of conspiracy to commit murder, the State must prove (1) an intent to agree, (2) an intent to cause death, and (3) an overt act." *Id.* at ¶ 20. In *Borner*, our Court held the trial court obviously erred when it failed to require proof of an essential element of the offense, an intent to cause death, and further failed to recognize the information was defective. *Id.* at ¶ 24. Other "jurisdictions have held that conspiracy to commit an unintentional murder, analogous to the alleged crime in this case, is not a cognizable offense." *Id.* at ¶ 19. Just as Borner was prejudiced, we conclude Whitman was prejudiced by this error. To deny Whitman the relief granted his codefendant would seriously affects the fairness, integrity, and public reputation of the criminal jury trial.

[¶ 12] In addition, N.D.R.App.P. 2 provides: "On its own or a party's motion, the supreme court may—to expedite its decision or for other good cause—suspend any provision of these rules in a particular case and order proceedings as it directs, except as otherwise provided in Rule 26(b)." North Dakota's rule is "substantially" the same as the Federal Rule. N.D.R.App.P. 2, Explanatory Note.

[¶ 13] Under Rule 2, Fed. R.App. P., "a court, in order to avoid manifest injustice, may overlook ... a failure to raise an argument on appeal." 16A Wright, *supra*, § 3948 (citations omitted). The United States Supreme Court has explained "Rule 2 gives courts of appeals the power, for 'good cause shown' to 'suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion.' Rule 26(b), however, contains certain exceptions to this grant of broad equitable discretion." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 314, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). The United States Court of Appeals for the 11th Circuit held in *United States v. Rivera Pedin*, that, under Fed. R.App. P. 2, it would consider the arguments contained in the codefendant's brief adopted by the appellant in order to prevent a manifest injustice. 861 F.2d 1522, 1526 n. 9 (11th Cir.1988). The United States Court of Appeals for the 9th Circuit held in *United States v. Ullah*, that under Fed. R.App. P. 2, it had discretion to review the issues raised by a codefendant that the appellant failed to raise on appeal. 976 F.2d 509, 514 (9th Cir.1992). "[I]t would be manifestly unjust to reverse a conviction of the codefendant who did raise the issue, while upholding the conviction of the defendant, when the same error affected both. Unfairness would also result if the court were not able to overturn a conviction based on plain error." 20 James Wm. Moore et al., *Moore's Federal Practice* ¶ 302.10[2] (3d ed.2013) (citing *Ullah*, at 514).

[¶ 14] We conclude it is appropriate to apply N.D.R.App.P. 2 to avoid manifest injustice and to provide Whitman with the same relief granted his codefendant.

[¶ 15] This Court also recognizes the availability of postconviction relief under N.D.C.C. § 29–32.1–01. "[A]ppellate courts in numerous states have noted their discretion to consider an issue on appeal, notwithstanding the lack of objection below, when appellate review of that issue would serve the 'interest of judicial economy.'" 7 Wayne LaFave et al., *Criminal Procedure* § 27.5(c) (3rd ed.2007) (citing *Barnes v. State*, 244 Ga. 302, 260 S.E.2d 40 (1979)). "[A] court may consider an issue raised for the first time on appeal where there is a 'strong possibility of reoccurrence' or the 'issue is one of public policy or of broad * * * concern.'" 7 LaFave, *supra*, § 27.5(c) (quoting *State v. Junkin*, 123 Ariz. 288, 599 P.2d 244 (App.1979)).

[¶ 16] This Court has used judicial economy in various instances. In *City of Bismarck v. Altevogt*, 353 N.W.2d 760, 766 (N.D.1984), judicial economy was the basis to decide an issue of excusable neglect, rather than remand it to a lower court. This Court, in the interest of judicial economy, considered the merits of a defendant's motion for new trial even though the defendant failed to make a timely application for new trial based upon newly discovered evidence. *State v. Olson*, 285 N.W.2d 575, 577 (N.D.1979). In *State v. Robideaux*, 475 N.W.2d 915, 916–17 (N.D. 1991), this Court addressed issues not properly raised by defendants in the interest of judicial economy. In *Beck v. Smith*, 296 N.W.2d 886, 889 (N.D.1980), judicial economy was the rationale to exercise this Court's discretionary authority to issue original and remedial writs. In *State v. Faber*, 343 N.W.2d 659, 660 (Minn.1984), the Minnesota Supreme Court used judicial economy as the basis to "put substance over form."

[¶ 17] Rule 2, N.D.R.Crim.P., explains that one. of the purposes of the North Dakota Rules of Criminal Procedure is "to eliminate unjustifiable expense and delay." For this Court to not take notice of the holding in *Borner* that conspiracy to commit extreme indifference murder, under N.D.C.C. §§ 12.1–06–04 and 12.1–16–01(1)(b), is not a cognizable offense, would be in conflict with the interest of judicial economy.

III

[¶ 18] We, therefore, exercise our discretion to notice this obvious error, and we reverse the criminal judgment.

IV

[¶ 19] The effect of this opinion places Whitman in the same position as if no crime had been charged, because no crime was in fact charged and Whitman may be prosecuted under a new charging document as if no prior proceedings existed. *See Borner*, 2013 ND 141, ¶ 26, 836 N.W.2d 383.

V

[¶ 20] We address the *Miranda* issue raised by Whitman, because the same issue will arise in a subsequent trial. Whitman argues the district court erred in allowing into evidence statements made to law enforcement officers after he had invoked his *Miranda* right to counsel. Our review of a district court's denial of a motion to suppress evidence is well established:

A trial court's findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. We do not conduct a de novo review. We evaluate the evidence presented to see, based on the standard

of review, if it supports the findings of fact.

*City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994) (citations omitted).

▮ [¶ 21] In *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602, "the 'United States Supreme Court held the prosecution may not use statements made during the "custodial interrogation" of a defendant unless it demonstrates the use of procedural safeguards, now generally referred to as *Miranda* warnings, to secure the privilege against self-incrimination.'" *State v. Huether*, 2010 ND 233, ¶ 14, 790 N.W.2d 901 (quoting *City of Fargo v. Egeberg*, 2000 ND 159, ¶ 12, 615 N.W.2d 542). "In determining whether a person is subject to custodial interrogation, we examine all circumstances surrounding the interrogation and consider how a reasonable man in the suspect's position would have understood the situation." *State v. Golden*, 2009 ND 108, ¶ 9, 766 N.W.2d 473. For *Miranda* purposes, interrogation is defined as questions "reasonably likely to elicit an incriminating response." *City of Fargo v. Wonder*, 2002 ND 142, ¶ 15, 651 N.W.2d 665. Further, "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474, 86 S.Ct. 1602. A suspect must unambiguously invoke his right to counsel to stop the interrogation, and if the suspect makes an ambiguous or equivocal statement concerning the right to counsel, the police are not required to end the interrogation or try to clarify whether the accused wants to invoke his right to counsel. *Davis v. United States*, 512 U.S. 452, 459–62, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *State v. Pederson*, 2011 ND 155, ¶ 19, 801 N.W.2d 723.

[¶ 22] Whitman argues he invoked his *Miranda* right to counsel and any subsequent statements made to law enforcement should be suppressed.

▮ [¶ 23] Around 10:45 p.m. on January 31, 2012, while being taken out of a patrol car, Whitman said, "I want to know what the exact charge is and get a lawyer." The police officer responded to Whitman's statement by saying, "That'll all be explained to you." The State concedes Whitman was in custody, but argues he was not being interrogated. The squad car video shows no questions were asked of Whitman by detectives, and therefore nothing was asked to "elicit an incriminating response." We conclude Whitman was not being interrogated for *Miranda* purposes at that point.

▮ [¶ 24] A transcript of an interview between Whitman and police detectives shows he made the following relevant statements in an interview room at approximately 1:45 a.m. on February 1, 2012:

> I'm not trying to [expletive] myself here. I'm pretty sure my lawyer is gonna appreciate me keeping my mouth shut to a degree.
>
> . . . .
>
> But, I can assure you that Cody had no idea what was going on. He didn't have any part in it whatsoever, and, [expletive], if I can get a lawyer before I have to do it, then, [expletive], I'll do what I got to do to make sure it's clear that he had no involvement with this.
>
> . . . .
>
> I wanna talk to my lawyer, get some advice, I know . . . like I said, I'll kick my lawyer loose just as fast. I want to know what I'm really facing. I know you guys are telling me your side; I just wanna hear from a lawyer what I'm looking at, what my odds are, what the deal is . . . you know, just hear my side of the situation from somebody who is actually on my side. I'll kick that [expletive] loose in a heartbeat once I know

what I was facing. I just want to know and I know you guys can't tell me.

At the suppression hearing, Whitman argued the latter statement was the most unequivocal, straightforward invocation of his right to counsel. He continued the conversation with the detectives, however, and even seemed to clarify that in the future an attorney could tell him what charge he was facing. Shortly after Whitman made that statement, a detective suggested, "Any time you want to talk man, after this, just get ahold of me. Talk to your lawyer. If you want to ...," and Whitman continued to talk. While it is clear Whitman mentioned the word lawyer a number of times, his statements were ambiguous. The district court denied Whitman's motion to suppress, concluding that because Whitman "freely continued to speak with the detectives and without further interrogation on the part of the detectives," his request was not an unambiguous request. The court further stated, "Whitman did say the word lawyer during the interview, but never in such a manner the detectives, could be found to understand Whitman desired to remain silent until such time as a lawyer was present ... Whitman never did shut up throughout the course of the interview."

[¶ 25] Resolving evidentiary conflicts in favor of affirmance, we conclude there is sufficient competent evidence capable of supporting the district court's finding Whitman did not unambiguously invoke his right to counsel.

## VI

[¶ 26] The criminal judgment is reversed.

[¶ 27] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 28] Because I would affirm the judgment of conviction, I respectfully dissent.

[¶ 29] The majority asserts obvious error, that is, North Dakota case law was clearly established and at the trial the lawyers and judge just missed the plain fact. Here the majority's problem is even greater than it was in *State v. Borner* because even the lawyers on appeal "missed" what the majority asserts was "clearly established law." Let us be clear; the majority reverses Whitman's conviction of conspiracy to commit murder on a basis never argued by Whitman even on appeal.

[¶ 30] The majority's assertion that what it divined as the law in *Borner* was clearly established North Dakota law prior to its opinion is hard to fathom. At ¶ 5, the majority quotes itself in *Borner* as saying, "We are *persuaded by the reasoning of those courts* that conclude conspiracy to commit unintentional murder creates a logical inconsistency because 'one cannot agree in advance to accomplish an unintended result.'" (Emphasis added.) That the majority acknowledged it *was persuaded* by the reasoning of some non-North Dakota courts over that of other non-North Dakota courts in reaching its decision *clearly establishes* that there was *no clearly established North Dakota law* on the point before its opinion.

[¶ 31] Seeking drugs, Whitman and Cody Borner took guns to the home of Michael, Timothy, and Shelly Padilla. At the house, a confrontation ensued between Whitman and Borner and two of the residents. Michael Padilla was shot and killed, and another resident was shot and wounded. Whitman and Borner fled the scene, leaving the weapons behind. Law enforcement officers went to Whitman's home, where he turned himself in. Whit-

man was arrested and charged with two counts of conspiracy to commit murder. Both Whitman and Borner were convicted of conspiracy to commit murder. On appeal, for the first time, Borner argued that conspiracy to commit murder under circumstances manifesting extreme indifference to the value of human life is not a crime in North Dakota. In *State v. Borner*, 2013 ND 141, 836 N.W.2d 383, the majority accepted his view and claimed that it had been clearly established North Dakota law all along even though no North Dakota court had ever said such a thing. Because the issue had not been raised in the trial court, if it was not clearly established law, there was no obvious error and it was improper to reverse the conviction. *See Borner*, at ¶¶ 71–77 (Sandstrom, J., dissenting); *see also* N.D.R.Crim.P. 52; *State v. Austin*, 520 N.W.2d 564, 569 (N.D. 1994) (when an issue has not been raised in the trial court, reversal on appeal requires obvious error); *State v. Vandehoven*, 2009 ND 165, ¶¶ 28–29, 772 N.W.2d 603 (obvious error established when interpretive caselaw has enunciated clear guidelines).

[¶ 32] Meanwhile, Whitman appealed, completely unaware of what the majority was going to claim was "clearly established" North Dakota law. On appeal, Whitman raised only the *Miranda* issue that the majority correctly rejects in part V of its opinion.

[¶ 33] I would affirm Whitman's conviction.

[¶ 34] Dale V. Sandstrom