1999 ND 34

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Donald Earl WILSON, Defendant and Appellant.**

No. 980249.

Supreme Court of North Dakota.

Feb. 23, 1999.

Ladd R. Erickson, Assistant State's Attorney, Mandan, N.D., for plaintiff and appellee.

Chad R. McCabe, Vinje Law Firm, Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Donald Wilson appealed from his criminal judgment and commitment issued by the South Central Judicial District Court. Wilson was tried before a jury and convicted of three counts of delivery of a controlled substance.

I

[¶ 2] In May 1998, Wilson was tried and convicted on three counts: Count I, Delivery of Controlled Substance, Amphetamine; Count II, Delivery of Controlled Substance, Diazepam; Count III, Delivery of Controlled Substance, Amphetamine.

[¶ 3] The State's main witness was a confidential informant, who had been recruited from a federal agency to come to the Bismarck–Mandan area. During the trial, the informant testified he had gone to a residence and had conducted a drug transaction with Wilson. The informant was paid expenses, along with a commission of $200 for each drug transaction he secured and later testified to in court.

[¶ 4] During the direct examination of a State witness, the prosecution approached the bench and told the judge a juror was sleeping. The court immediately took a short recess, after which the court said if the jurors became noticeably tired, a break would be taken. The trial resumed, and the jury convicted Wilson.

[¶ 5] Wilson appealed. The district court had jurisdiction under N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 6] Wilson argues the case should have been dismissed on public policy grounds because the government's informant had been paid $200 to testify in court, and cited as support, *United States v. Singleton*, 144 F.3d 1343 (10th Cir.1998). *Singleton* was heard by a panel of the Tenth Circuit, which reversed Singleton's conviction, holding the prosecuting attorney violated 18 U.S.C. § 201(c)(2)[1] when he offered leniency to a co-defendant in exchange for testimony. The en banc court vacated the panel decision, *Singleton*, 144 F.3d at 1361, and reheard the appeal. The en banc court reversed the decision of the panel and held 18 U.S.C. § 201(c)(2) is not violated when leniency is offered for testimony because that section does not apply to the United States or an Assistant United States Attorney functioning within the official scope of the office. *United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999). Wilson's argument *Singleton* stood for the proposition an informant cannot be paid or granted leniency is no longer valid. Indeed, *Singleton* now supports the State's and not the defendant's position.

[¶ 7] Further, the testimony of the confidential informant in this case was not testimony for leniency. The informant in Wilson's case admits he was paid $200 for each

---

1.  This section provides, in part:
    (c) Whoever-
    ....
    (2) directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or

    affirmation given or to be given by such person as a witness upon a trial ... before any court ... shall be fined under this title or imprisoned for not more than two years, or both.
    18  U.S.C. § 201(c)(2).

drug deal he transacted, not for his testimony alone. No leniency was involved.

[¶ 8] *State v. Murchison*, 541 N.W.2d 435, 441 (N.D.1995), provides guidance on whether the testimony of an informant is proper:

[I]t is undisputed that the Bureau paid Wolff $1,200 monthly, and gave him $200 weekly for expenses. The Bureau also paid him $75 for each person he was able to buy drugs from, and an additional $200 if they eventually charged that person with the crime. In addition, the Bureau gave Wolff a motorcycle and kept it repaired, paid his auto, motorcycle, and renter's insurance, and gave him $1,000 for a downpayment on a car....

The fact that Wolff received a fee for each person he induced to sell drugs, and an additional fee if charges were filed against that person, is not dispositive. These fees are not exorbitant, and are not contingent upon a conviction, so neither the amount nor the nature of the fees poses a risk of perjury or improper inducement by Wolff.

[¶ 9] The fees paid to the informant in this case were not exorbitant, and nothing suggests testimony was paid for, only the securing of a drug deal.

## II

[¶ 10] Wilson argues the district court erred in denying his requested jury instruction that clearly told the jury how to weigh the evidence of an informant's testimony.

[¶ 11] "Our review of jury instructions is ... well established. We consider the jury instructions as a whole, and determine whether they correctly and adequately inform the jury of the applicable law, even though part of the instructions when standing alone may be insufficient or erroneous." *State v. Woehlhoff*, 540 N.W.2d 162, 164 (N.D.1995) (citing *State v. Marshall*, 531 N.W.2d 284, 287 (N.D.1995); *State v. Saul*, 434 N.W.2d 572, 576 (N.D.1989)).

[¶ 12] Wilson requested the jury be instructed:

The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for person [sic] advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury determine whether the informer's testimony has been affected by interest, or by prejudice against the defendant.

The instructions given by the district court included:

In determining the believability of a witness, you may consider those facts and circumstances in the case which tend to strengthen, weaken, or contradict a witness's testimony. You may consider ... how the witness came to know the fact to which testimony is given, any possible interest in the outcome of the trial, [and] any bias or prejudice the witness may have....

[¶ 13] The court's instructions in this case correctly advised the jury of the law, and were sufficient to cover Wilson's concerns about the informant. *See State v. His Chase*, 531 N.W.2d 271, 274 (N.D.1995).

## III

[¶ 14] Wilson argues the juror sleeping during the trial deprived him of his constitutional rights. Rule 33 of the North Dakota Rules of Criminal Procedure provides a criminal defendant may move for a new trial on the basis of jury misconduct. After learning of the sleeping juror, Wilson neither objected nor asked for a mistrial. When a problem arises during a trial, the party affected must bring the irregularity to the court's attention and seek appropriate remedial action. *State v. Breding*, 526 N.W.2d 465, 472 (N.D.1995) (citing *State v. Abrahamson*, 328 N.W.2d 213 (N.D.1982)).

[¶ 15] In this case, the prosecutor brought the problem of the sleeping juror to the district court's attention. Because Wilson did not object or ask for a mistrial, reversal here would require obvious error. *State v. Smuda*, 419 N.W.2d 166, 167-68 (N.D.1988). Obvious error provides a basis for reversal if it constitutes error affecting substantial rights of the defendant. *Id.*

[¶ 16] Immediately upon being informed of the sleeping juror, the district court recessed the trial and also told the jury that breaks would be provided to rejuvenate them. Wilson argues this case is similar to *People v. Evans*, 710 P.2d 1167, 1167–68 (Colo.Ct.App. 1985), where a juror fell asleep during the defendant's closing argument, and caused prejudice to the defendant. *Evans* is distinguishable. In *Evans*, the court did not recess the trial even though aware the juror was sleeping during the defendant's closing argument, did not replace the sleeping juror with an alternate, and did not admonish the juror or jury. *Id.* at 1168.

[¶ 17] In this case, the court took a recess and explained to the jury it would take more frequent breaks if it felt the jury was tiring. Further, the juror fell asleep during the State's case-in-chief, not during the defendant's closing argument.

[¶ 18] Wilson did not ask for a mistrial, and the district court took steps to ensure Wilson had a fair trial. Had the court not done so, a result similar to that in *Evans* may have been warranted. Here, there is no obvious error requiring reversal.

### IV

[¶ 19] The decision of the district court is affirmed.

[¶ 20] VANDE WALLE, C.J., and NEUMANN, MARING, and KAPSNER, JJ., concur.

