1999 ND 109

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Dustin Lee SMITH, Defendant and Appellant.**

No. 980332.

Supreme Court of North Dakota.

June 18, 1999.

Rozanna C. Larson, Assistant State's Attorney, Minot, for plaintiff and appellee.

Thomas K. Schoppert of Schoppert Law Firm, Minot, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Dustin Lee Smith appeals a jury conviction finding him guilty of conspiracy to deliver a controlled substance. We affirm the conviction.

I

[¶ 2] On February 12, 1997, Brad Ronnie, a confidential informant for a drug task force in Minot, North Dakota, called Dustin Smith to arrange a drug sale. Smith was living with Jamie Metcalfe. Law enforcement monitored the call, during which Ronnie arranged to purchase from Smith, at 5:00 p.m. that day, an ounce of marijuana for $170. Ronnie received the buy money from law enforcement and went to Smith's house. Smith was not home when Ronnie arrived.

[¶ 3] The following day, February 13, 1997, Ronnie again called Smith's residence. Metcalfe answered the phone and told Ronnie to come over to the house. Ronnie again received the buy money from law enforcement and went to the house. Metcalfe answered the door and then went upstairs and asked Smith where the drugs were located. He told her they were under the bed. She retrieved the drugs, went downstairs, and gave them to Ronnie in exchange for the money. Smith contends he had no knowledge of the sale until he was charged with conspiracy to deliver a controlled substance.

[¶ 4] On August 5, 1998, a jury found Smith guilty of criminal conspiracy to deliver a controlled substance. On October 12, 1998, the trial court entered a criminal judgment and commitment sentencing Smith to four years with the Department of Corrections, with three years suspended for four years following Smith's release from custody.

[¶ 5] Smith appealed. The district court had jurisdiction under N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 6] Smith argues the prosecutor, during closing arguments, made an improper comment, stating "people that are involved in drugs—they will say anything to get out of jail and use anything to keep their hands clean. That's the type of person we're dealing with here, ladies and gentlemen." Smith's counsel objected, and the district court told the jury to disregard the statements.

[¶ 7] In *State v. Thiel*, 411 N.W.2d 66, 71 (N.D.1987), we said, "[g]enerally ... inappropriate prosecutorial comments, standing alone, do not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." The control of closing arguments is largely within the discretion of the district court, and we will not reverse on the ground that a prosecutor exceeded the scope of permissible closing argument unless a clear abuse of discretion is shown. *State v. Weatherspoon*, 1998 ND 148, ¶ 23, 583 N.W.2d 391 (citing *State v. Ash*, 526 N.W.2d 473, 481 (N.D.1995)). "Argument by counsel must be confined to facts in evidence and the proper inferences that flow therefrom." *Id.* (quoting *State v.*

*Kaiser*, 417 N.W.2d 376, 379 (N.D.1987)). "On appeal, this court 'must consider the probable effect the prosecutor's [inappropriate comments] would have on the jury's ability to judge the evidence fairly.'" *Id.* (quoting *Grand Forks v. Cameron*, 435 N.W.2d 700, 704 (N.D.1989) (quoting *United States v. Young*, 470 U.S. 1, 12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985))).

■■■ [¶ 8] An improper argument is prejudicial when it causes the defendant substantial injury and a different decision would have resulted, absent the error. *State v. Carlson*, 1997 ND 7, ¶ 43, 559 N.W.2d 802 (citing *State v. Azure*, 525 N.W.2d 654, 656 (N.D.1994)). To preserve the issue for appeal, the defendant must object to the State's improper closing argument and request a curative instruction. *Id.* Smith's counsel timely and properly objected to the statement, and the district court gave a curative instruction.

■■ [¶ 9] The jury was aware Smith was involved in drugs and had a vested interest in keeping himself out of jail. The State's confidential informant also did not have a clean record, and the jury understood his testimony could have been based on ulterior motives. The comment that Smith would say anything to stay out of jail, followed by the objection and curative instruction, did not affect his chances for a fair trial. From our review of the record, we conclude the prosecutor's improper closing argument about what people involved in drugs will say or do to stay out of jail could not have affected the jury's ability to judge the evidence fairly and does not justify reversal of the conviction. *See Weatherspoon*, 1998 ND 148, ¶ 24, 583 N.W.2d 391.

### III

[¶ 10] Smith argues the district court erred in refusing to give a jury instruction on the testimony of an informer or interested party. Smith had submitted the following written instruction to the Court:

The testimony of an informer, or an interested witness who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether either the informer or the interested witness's testimony has been affected by interest or by prejudice against the defendant.

The district court gave an instruction based on the North Dakota Pattern Jury Instruction No. 2101, regarding weight and credibility of witnesses.

You are the judges of all the questions of fact in this case. You alone must weigh the evidence under these Instructions and determine the credibility of those who have testified. As to these matters the Court expresses no opinion.

In performing this task, you may consider any facts or circumstances in the case which tend to strengthen, weaken, or contradict a witness' testimony. You may consider the age, intelligence, and experience of the witness, the strength or weakness of the witness' recollection, how the witness came to know the facts to which the witness testified, the witness' possible interest in the outcome of the trial, any bias or prejudice the witness may have, the witness' manner and appearance, whether the witness was frank or evasive while testifying, and whether the witness' testimony is reasonable or unreasonable.

If you find a conflict in the evidence you should reconcile it, if you can. If you cannot do so, you have the right to determine whom of the witnesses you will believe, in whole or in part.

You should give to all credible testimony its just and fair weight. You should consider the evidence in this case in the light of your own common sense and your ordinary experience and observation of human affairs.

[¶ 11] "Our review of jury instructions is ... well established. We consider the jury instructions as a whole, and determine whether they correctly and adequately inform the jury of the applicable law, even though part of the instructions when standing alone may be insufficient or erroneous." *State v. Woehlhoff,* 540 N.W.2d 162, 164 (N.D.1995) (citing *State v. Marshall,* 531 N.W.2d 284, 287 (N.D.1995); *State v. Saul,* 434 N.W.2d 572, 576 (N.D. 1989)).

[¶ 12] We recently dealt with the issue of whether the district court must give a specific defense-requested instruction when a confidential informant is involved. *See State v. Wilson,* 1999 ND 34, ¶ 13, 590 N.W.2d 202 (citing *State v. His Chase,* 531 N.W.2d 271, 274 (N.D.1995)). In *Wilson,* we held the district court did not have to give a specific defense-requested instruction if the court's instructions correctly advised the jury of the law. Here, the district court's instructions adequately informed the jury regarding the weight and credibility of the witnesses and correctly advised the jury of the law. The district court did not err in refusing to give the requested instruction.

### IV

[¶ 13] The dissent would reverse based on the jury instruction given by the district court concerning conspiracy. The defendant did not object at trial, and has not raised the issue on appeal.

[¶ 14] Under N.D.R.Crim.P. 52(b), "[o]bvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The note to Rule 52(b) explains: "the power to notice obvious error, whether at the request of counsel or on the court's own motion, is one the courts should exercise cautiously and only in exceptional circumstances. The power should be exercised only where a serious injustice has been done to the defendant."

*See also Johnson v. United States,* 520 U.S. 461, 469, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (concluding the failure to submit the issue of materiality in a perjury case to the jury was a plain error, but did not require reversal under Fed.R.Crim.P. 52(b) because the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings); *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citation omitted) (recognizing an appellate court should not exercise its discretion to correct a plain error unless the error "seriously affects the fairness, integrity or public reputation of judicial proceedings"). "Our power to notice obvious error is exercised cautiously and only in exceptional situations where the defendant has suffered serious injustice." *State v. Smuda,* 419 N.W.2d 166, 168 (N.D.1988) (citing *State v. Miller,* 388 N.W.2d 522 (N.D.1986)). This is not such a case. No "serious injustice" has occurred that would require this Court to notice obvious error on its own motion.

### V

[¶ 15] Smith's other arguments are without merit, and the judgment of the district court is affirmed.

[¶ 16] VANDE WALLE, C.J., and KAPSNER, J., concur.

NEUMANN, Justice, dissenting.

[¶ 17] This Court has the power to notice obvious error under Rule 52(b), N.D.R.Crim.P., at the request of counsel or on its own motion. *State v. Rindy,* 299 N.W.2d 783, 785 (N.D.1980) (citing 3A Charles Alan Wright, *Federal Practice and Procedure* § 856, at 338 (2d ed.1982)). "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken." *Silber v. United States,* 370 U.S. 717, 718, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962) (per curiam).[1]

---

1.  Our rule differs from the federal rule only in

the substitution of the word "obvious" for

[¶ 18] Under the framework adopted in *State v. Olander*, 1998 ND 50, 575 N.W.2d 658, before we may take notice of obvious error there must be (1) error, (2) that is plain, and (3) affects substantial rights. *Id.* at ¶ 14. Once this is established, we have the discretion to correct the obvious error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at ¶ 16. An obvious error may seriously affect the fairness, integrity, or public reputation of judicial proceedings regardless of the defendant's actual innocence. *Id.* at ¶ 16.

[¶ 19] In assessing the possibility of obvious error affecting the substantial rights of the defendant under Rule 52(b), N.D.R.Crim.P., we must examine the entire record and the probable effect of the error in light of all the evidence. *State v. Kraft*, 413 N.W.2d 303, 307 (N.D.1987).

[¶ 20] Here, at the beginning of the trial, the State read the information to the jury, stating, in part:

Prosecuting Attorney of Ward County charges that on or about the 13 th day of February, 1997, in the City of Minot, Ward County, North Dakota, the above-named defendant committed the offense of: Criminal Conspiracy—Delivery of a Controlled Substance, in violation of Sections 12.1–06–04; 19–03.1–05(5)(j); 19–03.1–23 of the North Dakota Century Code, by then and there the defendant, Dustin Smith, agreed with one or more persons to engage in or cause conduct which in fact constitutes an offense or offenses and any one or more of such persons did an overt act to effect the objective of the conspiracy, to wit: *He agreed with Jamie Metcalfe and/or Brad Ronnie* to deliver the controlled substance of marijuana to Brad Ronnie for the purchase price of $170.00 under circumstances in which either the defendant, Dustin Smith, or Jamie Metcalfe, did an overt act to affect the objective of the conspiracy, delivery of a controlled substance by actually delivering mari-

juana to Brad Ronnie, agreeing to sell marijuana to Brad Ronnie, or by accepting the purchase price of $170.00. (Emphasis added.)

[¶ 21] Following the reading of the information, the trial court gave the jury its preliminary jury instructions. The court read the jury the "Essential Elements of the Offense—Criminal Conspiracy" jury instruction, which states, in part:

The State satisfies its burden of proof if the evidence shows, beyond a reasonable doubt, the following essential elements of the offense charged.

1. On or about the 13 th day of February, 1997, in Ward County, North Dakota, *the defendant willfully agreed with one or more persons* to engage in or cause conduct which, in fact, constitutes an offense, that is, delivery of a controlled substance, and

2. Any one or more of such persons, including the defendant, did an overt act to effect an objective of the conspiracy.

Criminal Conspiracy: A person commits conspiracy if that person *agrees with one or more persons*, to engage in or cause conduct constituting an offense, and any one or more of those persons acts overtly to effect an objective of the conspiracy. The agreement need not clearly be stated. It may be implicit in the fact of collaboration or existence of other circumstances. If a person knows or could expect that one with whom that person agrees, has agreed, or will agree with another to effect the same objective, that person is deemed to have agreed with the other, whether or not that person knows the other's identity. (Emphasis added.)

[¶ 22] "The purpose of jury instructions is to apprise the jury of the state of the law." *State v. Murphy*, 527 N.W.2d 254, 256 (N.D.1995). We review jury instructions as a whole and consider whether they

"plain." N.D.R.Crim.P. 52, Explanatory Note.

correctly and adequately advise the jury of the applicable law. *State v. Steinmetz,* 552 N.W.2d 358, 361 (N.D.1996). When the jury instruction, read as a whole, is erroneous, relates to a subject central to the case, and affects the substantial rights of the defendant, it is grounds for reversal. *State v. Bonner,* 361 N.W.2d 605, 609 (N.D.1985).

[¶ 23] We recently held that proof of a buyer-seller relationship, without more, is not sufficient to prove a conspiracy to deliver a controlled substance. *State v. Serr,* 1998 ND 66, ¶ 13, 575 N.W.2d 896. We explained the "something more" is a further understanding between the buyer and seller, often implicit, relating to the subsequent distribution by the buyer. *Id.* at ¶ 13 (citing *United States v. Clay,* 37 F.3d 338, 341 (7th Cir.1994)). Furthermore, the two parties at the time of the conspiratorial agreement must have contemplated the resale of the narcotics. *Id.* at ¶ 13. Therefore, it is contrary to the law of this State to convict a defendant of conspiracy to deliver a controlled substance arising purely out of a proven buyer and seller relationship.

[¶ 24] In this case, the information charges Smith, the seller, with conspiracy between Metcalfe and/or Ronnie, the buyer. Thus, the information, as charged, includes the possibility of conviction for a conspiracy between Smith and Ronnie, the buyer and seller. The jury instruction containing the elements of conspiracy would also permit a jury to find a conspiracy between Smith and Ronnie. However, the greatest problem is the State's central theory of the case as tried to the jury seems to have been the existence of a conspiracy between Smith and Ronnie.[2]

[¶ 25] In presenting its case, the State during opening statements said, "[s]imply put, ladies and gentlemen, this is a trial about an agreement. A secret agreement between the defendant, Dustin Smith, and a person by the name of Brad Ronnie." During the trial, the State called Ronnie, Wes Beck, and Steve Niebuhr as witnesses. Ronnie testified regarding how a purchase was arranged on February 12, 1997, and the purchase was subsequently completed on February 13, 1997. Wes Beck and Steve Niebuhr, both Minot Police Officers involved in the case, gave testimony regarding their dealings with Ronnie. All three of these witnesses testified at length about the facts and circumstances surrounding the deal set up between Smith and Ronnie.

[¶ 26] By contrast, the State provided limited testimony about a possible conspiracy between Metcalfe and Smith. During her testimony, Metcalfe stated she knew Ronnie was coming over to buy marijuana, but could not recall how she had come to know that information.

[¶ 27] During closing statements, the theme of the case had not changed. The State argued, "the defendant made an agreement with Brad Ronnie." Later in discussing the sequence of events, the State asserted Metcalfe, by giving the drugs to Ronnie on February 13, 1997, "[t]hereby complet[es] the objectives of the agreement that started on the 12 th between the defendant and Brad Metcalfe—or excuse me, Brad Ronnie."

[¶ 28] Considering the evidence presented as a whole, it is apparent the State's main case was the existence of a conspiracy between Smith and Ronnie. When considered in that context, the jury instructions, as given, permit the jury to convict Smith for this alleged "conspiracy" between buyer and seller, a conspiracy which is specifically contrary to the law of this State. Thus, when considered in the context of the State's theory of the case,

---

2. The State did not present any evidence proving the required "something more" under *Serr.* There is a scintilla of evidence relating to a conspiracy between Smith and Metcalfe and oblique reference to an implicit agreement between Metcalfe and Smith in closing statement, but clearly the State's case was predicated on finding a conspiracy between Smith and Ronnie.

the jury instruction regarding the elements of criminal conspiracy to deliver a controlled substance does not correctly advise the jury of the law, even though, in another setting, it might well be an adequate instruction. Quite clearly, when a jury instruction allows a defendant to be convicted for doing something that does not constitute the crime charged, it is error affecting substantial rights of the defendant, obvious error which we may recognize.

[¶ 29] In my opinion this is an obvious error that affects the fairness, integrity, or public reputation of judicial proceedings. *Olander*, 1998 ND 50, ¶ 16, 575 N.W.2d 658. Because there was some evidence concerning a possible conspiracy between Metcalfe and Smith, I would reject Smith's argument that his motion for judgment of acquittal should have been granted by the trial court. I would remand for a new trial.

[¶ 30] MARING, J., concurs.