2009 ND 141

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Douglas MYERS, Defendant and Appellant.**

**Douglas Jon Myers, Petitioner and Appellant**

v.

**State of North Dakota, Respondent and Appellee.**

Nos. 20080104, 20090004.

Supreme Court of North Dakota.

July 21, 2009.

Pamela Ann Nesvig (submitted on brief), Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Travis Wayne Finck (submitted on brief), Bismarck, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Douglas Myers appeals the district court's judgment entered after a jury found him guilty of violating a domestic protection order. Myers also appeals the district court's order denying his application for post-conviction relief. We affirm the district court's judgment, concluding Myers' right to a fair trial was not violated. We also affirm the district court's order denying Myers' application for post-conviction relief because Myers was not denied effective assistance of counsel.

I

[¶ 2] On August 20, 2007, Myers was arrested for violating a domestic violence protection order. On April 16, 2008, a jury trial was held on the charge. Preston McKay, a police officer with the Bismarck Police Department, testified at trial that on August 20, 2007, he was off-duty at home watching television when he heard a vehicle making excessive noise pass by his apartment. Officer McKay said the second time he heard the vehicle pass by, he went outside and yelled at the driver, Myers, to pull over. Officer McKay said Myers pulled over and he asked Myers what he was doing. Officer McKay stated Myers said he was trying to get his sister's attention. While Officer McKay was talking to Myers, one of Officer McKay's neighbors came outside and said he had called the police to report Myers' reckless driving.

[¶ 3] Brandon Rask, a police officer with the Bismarck Police Department, responded to the call of reckless driving. Officer Rask testified that when he arrived at the scene, he spoke with Officer McKay first. Officer McKay informed Officer Rask that he had observed Myers driving at excessive speeds, squealing his tires and revving his engine. Officer Rask then ap-

proached Myers and asked him about his driving. Officer Rask stated Myers initially said he was in the area to visit his sister. However, later in their conversation Officer Rask testified that Myers said that he was driving recklessly because his ex-girlfriend was in the area and he wanted her to leave. Officer Rask issued Myers a citation for a loud stereo. After receiving the citation, Officer Rask testified Myers left the scene.

[¶ 4] Scott Meyers, a sergeant with the Bismarck Police Department, also responded to the call of reckless driving. Sergeant Meyers said before he got out of his patrol car, a woman approached his patrol car and told him that the individual Officer Rask pulled over was her ex-boyfriend and that she had a protection order against him. Sergeant Meyers testified he reviewed the protection order, noticing it prohibited Myers from coming within 100 yards of the victim. Sergeant Meyers said he measured the distance from where Myers' car was parked to the front door of the residence the victim was visiting to determine if Myers had violated the 100–yard restriction. Sergeant Meyers testified the distance from Myers' car to the front of the residence was a little over 135 feet. Because it appeared Myers was within 100 yards of the victim, Sergeant Meyers believed he had probable cause to arrest Myers for violating the domestic violence protection order. Sergeant Meyers testified since Myers had already left the scene, that he radioed Officer Rask informing him he had probable cause to arrest Myers and that Officer Rask stated he was on his way over to Myers' residence.

[¶ 5] Officer Rask testified that when he arrived at Myers' residence, Myers was standing outside of his vehicle. Officer Rask said he talked to Myers while he waited for Sergeant Meyers to arrive. Of-

ficer Rask testified he asked Myers "to elaborate on how he knew that [the victim] was in the area where we had stopped him." Officer Rask stated Myers said he knew the victim was in the area because her car was parked on the street. Sergeant Meyers then arrived, placed Myers under arrest for violating a domestic violence protection order and transported him to the police department and then to jail.

[¶ 6] At trial, Myers testified he was aware of the protection order. However, Myers denied telling Officer Rask that he was driving recklessly to get his ex-girlfriend's attention. Myers said he was driving recklessly to get his sister's attention because he wanted her to move her car. Myers testified he did not know the victim was in the neighborhood, but he did state that the victim drives a red Pontiac Vibe and that two red Vibes were parked on the street that night. Myers' sister testified she called Myers to come over to her house to sit with her until her boyfriend got off of work. Myers' sister said when she talked to Myers that evening, he did not indicate he knew the victim was in the neighborhood.

[¶ 7] The jury found Myers guilty, and Myers was sentenced to one year with all but 60 days suspended for a period of two years subject to the terms and conditions of supervised probation. On April 28, 2008, Myers filed a notice of appeal which was stayed, allowing him to pursue an application for post-conviction relief. On November 5, 2008, a hearing was held on Myers' application for post-conviction relief. The district court denied Myers' application for post-conviction relief on December 23, 2008. On January 5, 2009, Myers filed a notice of appeal from the district court's order denying his application for post-conviction relief. Myers' appeal from his guilty verdict was joined

with his appeal from his application for post-conviction relief.

## II

[¶ 8] Myers argues he is entitled to a new trial because his constitutional right to a fair trial was violated when a juror slept during Sergeant Meyers' testimony. A criminal defendant may move for a new trial on the basis of jury misconduct under Rule 33 of the North Dakota Rules of Criminal Procedure, but Myers did not move the court for a new trial. Rather, after the jury was dismissed for lunch, Myers' trial counsel told the court he was concerned that one juror was sleeping during Sergeant Meyers' testimony because her eyes were closed during most of the sergeant's testimony. Myers' trial counsel did not ask for a new trial, but brought the alleged sleeping juror to the court's attention because he "didn't know if the Court wanted to address that with [the juror]." Both the State and the district court said they had not noticed the juror sleeping. The district court stated it would keep a close eye on the jury and if it noticed similar behavior in the afternoon, it would mention it to the jury.

[¶ 9] After both parties rested and while the parties were discussing jury instructions with the court, the State brought up the previous allegation of a sleeping juror. The State said it had kept a closer eye on the jury and did not notice anything in the afternoon. The court also stated it did not see anything in the afternoon and again reiterated it did not see a juror sleeping that morning either. Myers' trial counsel also said he believed the jury was better in the afternoon. Nothing more was said about the allegation of juror misconduct.

[¶ 10] We have stated that "[w]hen a problem arises during a trial, the party affected must bring the irregu-

larity to the court's attention and seek appropriate remedial action." *State v. Wilson,* 1999 ND 34, ¶ 14, 590 N.W.2d 202. If juror misconduct is noticed and the criminal defendant does not object or request a mistrial, reversal requires obvious error. *Id.* at ¶ 15 (citation omitted). To establish obvious error, a defendant must demonstrate "(1) error, (2) that is plain, and (3) affects substantial rights." *State v. Gibbs,* 2009 ND 44, ¶ 12, 763 N.W.2d 430 (quoting *State v. Olander,* 1998 ND 50, ¶ 14, 575 N.W.2d 658). "We exercise our power to notice obvious error cautiously, and only in exceptional circumstances where the accused has suffered serious injustice." *City of Fargo v. Lunday,* 2009 ND 9, ¶ 5, 760 N.W.2d 136 (quoting *State v. Yineman,* 2002 ND 145, ¶ 22, 651 N.W.2d 648).

[¶ 11] Myers argues he is entitled to a new trial because his case is similar to *People v. Evans,* 710 P.2d 1167, 1168 (Colo. Ct.App.1985), where the court found a juror sleeping during the defendant's closing argument caused prejudice to the defendant, entitling the defendant to a new trial. Myers contends a new trial is required because the district court failed to take proper remedial measures after being notified of the sleeping juror. The State contends this case is similar to *Wilson,* where we determined obvious error did not occur when a juror slept during the State's case-in-chief. 1999 ND 34, ¶¶ 17, 18, 590 N.W.2d 202.

[¶ 12] In *Wilson,* we said *Wilson* was not similar to *Evans* and obvious error did not occur in *Wilson* because "the court took a recess and explained to the jury it would take more frequent breaks if it felt the jury was tiring." *Id.* at ¶ 17. We also explained *Wilson* was not like *Evans* because in *Wilson* "the juror fell asleep during the State's case-in-chief, not during the defendant's closing argument." *Id.* We

concluded in *Wilson* that obvious error had not occurred because "the district court took steps to ensure Wilson had a fair trial." *Id.* at ¶ 18. In this case, the defendant did not establish the juror was in fact sleeping. However, the district court took steps to ensure Myers had a fair trial by watching the jury throughout the rest of the trial to make sure all jurors were paying attention. The district court was never called upon to do more than it did. In addition, if the juror did fall asleep, it was during the State's case-in-chief, not during the defendant's cross examination of a witness and not during the defendant's case-in-chief when evidence more beneficial to the defendant might be introduced. We affirm the district court's judgment, concluding obvious error does not exist because Myers' right to a fair trial was not shown to have been violated.

### III

[¶ 13] In both Myers' direct appeal and his post-conviction appeal, Myers argues he was denied effective assistance of counsel. Both appeals allege the same conduct constitutes ineffective assistance of counsel. "We have said an ineffective assistance claim should normally be brought in a post-conviction proceeding 'so the parties can fully develop a record . . . of counsel's performance and its impact on the defendant's claim.'" *State v. Schweitzer*, 2007 ND 122, ¶ 25, 735 N.W.2d 873 (quoting *State v. Bertram*, 2006 ND 10, ¶ 39, 708 N.W.2d 913). Here, Myers' direct appeal was stayed to allow Myers to make his record for the ineffective assistance of counsel claim. Since Myers developed a record of his trial counsel's performance in the post-conviction proceeding, review of Myers' direct appeal ineffective-assistance-of-counsel claim is unnecessary.

[¶ 14] Myers argues the district court erred in denying his application for post-conviction relief because he was denied effective assistance of counsel. We have stated that:

"Post-conviction relief proceedings are civil in nature and governed by the North Dakota Rules of Civil Procedure. Whether a petitioner received ineffective assistance of counsel is a mixed question of law and fact and is fully reviewable on appeal. Under N.D.R.Civ.P. 52(a), the district court's findings of fact will not be disturbed on appeal unless clearly erroneous. 'A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made.'"

*Sambursky v. State*, 2008 ND 133, ¶ 7, 751 N.W.2d 247 (quoting *Heckelsmiller v. State*, 2004 ND 191, ¶ 5, 687 N.W.2d 454) (internal citations omitted). To establish a claim of ineffective assistance of counsel a defendant "has a heavy burden of proving (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced by counsel's deficient performance." *Clark v. State*, 2008 ND 234, ¶ 12, 758 N.W.2d 900 (quoting *Patten v. State*, 2008 ND 29, ¶ 9, 745 N.W.2d 626). "Effectiveness of counsel is measured by an 'objective standard of reasonableness' considering 'prevailing professional norms.'" *Clark*, at ¶ 12 (quoting *Patten*, at ¶ 9). To prevail on an ineffective assistance of counsel claim, "[t]he defendant must first overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Clark*, at ¶ 12 (quoting *Patten*, at ¶ 9). "Trial counsel's conduct is presumed to be reasonable and courts consciously attempt to limit the dis-

torting effect of hindsight." *Clark*, at ¶ 12 (quoting *Patten*, at ¶ 9).

■ [¶ 15] "To demonstrate prejudice, the defendant must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, and the defendant must specify how and where trial counsel was incompetent and the probable different result." *State v. Bates*, 2007 ND 15, ¶ 19, 726 N.W.2d 595. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the jury verdict." *Flanagan v. State*, 2006 ND 76, ¶ 17, 712 N.W.2d 602.

### A

■ [¶ 16] Myers claims he was denied effective assistance of counsel because his trial counsel failed to request a mistrial, ask for an alternate juror to be seated or ask for any remedy when he informed the court of the juror misconduct. The district court did not determine whether Myers' trial counsel's failure to request a mistrial or ask for an alternate juror to be seated fell below the objective standard of reasonableness. Rather, the district court determined Myers was not denied effective assistance of counsel because Myers failed to demonstrate he was prejudiced by the juror purportedly sleeping. The district court determined Myers was not prejudiced by the alleged sleeping juror because the court took affirmative steps by watching the jurors closely to ensure Myers had a fair trial. We have stated that "[i]f it is easier to dispose of an [ineffective assistance of counsel] claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Schweitzer*, 2007 ND 122, ¶ 24, 735 N.W.2d 873 (quoting *Flanagan*, 2006 ND 76, ¶ 10, 712 N.W.2d 602).

[¶ 17] The evidence reveals that after being notified by Myers' trial counsel of the potential juror misconduct, the district court watched the jury closely to ensure they were attentive. Myers failed to demonstrate he was prejudiced by the allegedly sleeping juror and, therefore, failed to meet his burden of demonstrating that but for his trial counsel's failure to seek a remedy for the alleged juror misconduct, the result of his criminal trial would have been different. We affirm the district court's order finding Myers was not prejudiced by his lawyer not requesting a new trial or replacement of the juror alleged to have been sleeping.

### B

■ [¶ 18] Myers also claims he was denied effective assistance of counsel because his trial counsel failed to impeach the victim's testimony. At trial, the victim testified she had not contacted Myers since obtaining the protection order. During the post-conviction proceeding, Myers' trial counsel testified that at trial he had in his possession a letter that would have contradicted the victim's testimony and bolstered Myers' testimony that the victim had contacted him since the protection order was entered. At the post-conviction proceeding, Myers' trial counsel testified he did not offer the letter because it did not matter whether the victim had contacted Myers since violating a protection order is a strict liability crime. Myers' trial counsel explained their defense for trial was that Myers did not know the victim was in the area and that offering the letter did not fit into that strategy.

[¶ 19] In determining Myers' trial counsel was not ineffective, the district court stated Myers' trial counsel's decision not to enter the letter into evidence was a matter of trial strategy and did not fall below the range of reasonable professional assistance. We have stated that "[o]n appeal, we do not second guess matters of trial tactics, such as the decision to call

certain witnesses, hire private investigators, or how to question certain witnesses." *Noorlun v. State,* 2007 ND 118, ¶ 12, 736 N.W.2d 477. The evidence reveals Myers' trial counsel's decision not to offer the letter to impeach the victim's testimony or to bolster Myers' testimony was a matter of trial strategy and did not fall below the objective standard of reasonableness. We affirm the district court's order finding Myers was not denied effective assistance of counsel.

## IV

[¶ 20] We affirm the district court's judgment, concluding Myers' right to a fair trial was not violated. We also affirm the district court's order, concluding the district court properly denied Myers' application for post-conviction relief because Myers was not denied effective assistance of counsel.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.