2013 ND 79

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Felipe ESTRADA, Defendant and Appellant.**

No. 20120270.

Supreme Court of North Dakota.

May 14, 2013.

Gary E. Euren (argued) and Kara Schmitz Olson (on brief), Assistant State's Attorneys, Fargo, N.D., for plaintiff and appellee.

Garrett D. Ludwig, Mandan, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1]   Felipe Estrada appeals a district court judgment after a jury found him guilty of two counts of aggravated assault and two counts of reckless endangerment. We affirm.

## I

[¶ 2]   After a shooting incident in a Fargo movie theater parking lot, the State charged Estrada with attempted murder for shooting Juan Garza in an attempt to cause his death.   Estrada was also charged with aggravated assault for striking Charles Roskom on the head with a handgun and fracturing his skull and with two counts of reckless endangerment for shooting in the direction of DeShawn Stodola as she ran away and for shooting toward members of the public inside the movie theater.

[¶ 3]   At the jury trial, the State presented evidence Estrada shot Garza six times.   The State presented eyewitness testimony from Garza, Garza's ex-wife Stodola, and Roskom.

[¶ 4]   Stodola and Garza had been married and are divorced.  Stodola dated Estrada for six years after the divorce.  On

the day of the shooting, Stodola and Garza were driving together to a gas station when Roskom, who was driving behind them, called to inform Garza that Estrada was following them. Garza, Roskom, and Estrada all pulled into the West Acres Theater parking lot. Garza and Estrada got out of their vehicles and started arguing. Estrada, carrying a handgun, shot at Garza, who then started running away. Stodola got out of Garza's car and ran through the parking lot toward the theater and saw Garza fall down after being shot. Estrada continued to shoot at and chase Garza, shooting him once after he had fallen down.

[¶ 5] Roskom hit Garza and Estrada with his car. He got out of his vehicle and threw his cell phone at Estrada in order to get close to him. Estrada hit Roskom in the head with his gun, fracturing his skull. Roskom was able to get the gun away from Estrada, and Estrada fled the scene. The only gun found at the scene was Estrada's handgun.

[¶ 6] The State also presented eyewitness testimony from three members of the public present at the theater and one movie theater employee who testified a bullet went through a movie theater window.

[¶ 7] In his defense, Estrada testified he put a gun and ammunition in his truck to go to the shooting range. He testified that he spoke with Stodola on the phone because she needed gas money and that she instructed him to meet her at West Acres movie theater. When he arrived at the theater parking lot, he testified, two vehicles approached him, a van carrying Garza and Stodola and a car carrying Lamont Nelson and Roskom. He testified he got out of his car and walked toward Stodola but was threatened by Garza, and he claims he saw Garza with a gun. He testified he then shot at Garza to disarm him. Estrada said he shot 10 times, shooting at Garza as he was running in between cars. He shot Garza in the shoulder after Garza was down on the ground. Estrada testified Roskom attacked him and he defended himself. Estrada testified he fled the scene in his car and was stopped by police and arrested.

[¶ 8] After all testimony was heard, jury instructions were given for self-defense after provocation and for excuse. The district court, at Estrada's request, also gave a lesser instruction for aggravated assault with a firearm or destructive device for the first count instead of attempted murder.

[¶ 9] The jury found Estrada guilty of the lesser charge of aggravated assault with a firearm or destructive device, aggravated assault, and two counts of reckless endangerment.

[¶ 10] The district court sentenced Estrada to ten years' imprisonment for aggravated assault with a firearm. The court also ordered him to serve four years for count two and two years for counts three and four with the sentences to run consecutively. Estrada appealed.

[¶ 11] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Estrada timely appealed under N.D.R.App.P. 4(b). We have jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

## II

### A

[¶ 12] Estrada argues the district court erred in giving a self-defense jury instruction that did not distinguish between the two separate defenses of justification and excuse.

[¶ 13] Estrada did not object to the district court's self-defense instruction. "We have long held that a party cannot

claim error in jury instructions when that party has not offered a proposed instruction or objected to the instructions given." *State v. Glass,* 2000 ND 212, ¶ 18, 620 N.W.2d 146. "When a party fails to adequately preserve the issue of allegedly improper jury instructions under N.D.R.Crim.P. 30(c), our inquiry is limited under N.D.R.Crim.P. 52(b) 'to whether the court's failure to instruct the jury on this issue was obvious error affecting substantial rights.'" *Id.* at ¶ 19 (quoting *State v. Olander,* 1998 ND 50, ¶ 11, 575 N.W.2d 658). Under N.D.R.Crim.P. 52(b), when an issue has not been properly preserved for appeal, our review of the issue is limited "to whether the alleged error constitutes an obvious error affecting the substantial rights of the defendant." *State v. Kensmoe,* 2001 ND 190, ¶ 21, 636 N.W.2d 183. We exercise our authority to notice obvious error cautiously and only in exceptional circumstances when the defendant has suffered serious injustice. *State v. Foreid,* 2009 ND 41, ¶ 13, 763 N.W.2d 475. "'An alleged error does not constitute obvious error unless there is a clear deviation from an applicable legal rule under current law.'" *Kensmoe,* at ¶ 21 (quoting *State v. Miller,* 2001 ND 132, ¶ 25, 631 N.W.2d 587). "To establish obvious error, the defendant must show: (1) error; (2) that is plain; and (3) affects substantial rights." *State v. Carpenter,* 2011 ND 20, ¶ 16, 793 N.W.2d 765 (citations omitted).

■■ [¶ 14] "We consider the jury instructions as a whole, and determine whether they correctly and adequately inform the jury of the applicable law, even though part of the instructions when standing alone may be insufficient or erroneous." *State v. Smith,* 1999 ND 109, ¶ 11, 595 N.W.2d 565 (internal quotation omitted). "'The district court is not required to instruct the jury in the exact language requested by a party if the in-structions given are not misleading or confusing, and if they fairly advise the jury of the law on the essential issues of the case.'" *State v. Starke,* 2011 ND 147, ¶ 12, 800 N.W.2d 705 (quoting *State v. Blunt,* 2010 ND 144, ¶ 24, 785 N.W.2d 909).

1

■ [¶ 15] Estrada first argues the district court erred when it failed to provide a justification jury instruction. He argues there was sufficient evidence presented to warrant an instruction for both justified self-defense and excused self-defense. The district court gave the following modified self-defense after provocation instruction to the jury:

A person may use force upon another to defend oneself against danger of imminent unlawful bodily injury, sexual assault, or detention by the other person. One may not use force if one causes bodily injury to the other person and had intentionally provoked the danger defended against or has entered into mutual combat with another person or is the initial aggressor, unless resisting force that is clearly excessive in the circumstances.

A person may use defensive force if, after one withdraws from an encounter and has indicated to the other person that one has done so, the other person nevertheless continues or menaces unlawful action.

[¶ 16] In explaining why it gave a modified instruction for self-defense after provocation, the district court said:

So Nonexistence of Defense would not need changing, in my opinion. Self–Defense After Provocation, I believe I would have to strike the word "justified." It says "a person is justified." I think it's more appropriate simply to say "a person may use force upon another." I don't want the jury to think that the

self-defense provocation instruction only applies to justification, because it would not. In my opinion, it would apply both to justification and excuse. So I'd have to take out the word "justified."

Again, the Pattern Jury Instruction Commission makes these instructions in general for the vast majority of cases. In the vast, vast majority of cases in the state of North Dakota, self-defense is claimed as a justification, not an excuse. It can be claimed as an excuse. It has been claimed as an excuse. But the pattern jury instruction is for the quote/unquote "ordinary case." *So I'd have to do some modification there making it applicable to both.*

. . . .

And limits on deadly force, the word "justified" is listed there, I believe, in each paragraph. Again, I would strike the word "justified," simply by, for example, in the first paragraph saying "a person may not use more force than is necessary," and the like. *So it could be argued and applied, because I believe it should under North Dakota law, to either or both excuse or justification self-defense.*

So noting the excuse instruction that you're okay with as read into the record by the Court, any problem with those modifications so they apply to both justification and excuse, Mr. Mottinger?

MR. MOTTINGER: No.

(Emphasis added.) By omitting the word "justified," the district court then sought to clarify to the jury that they may consider both justified and excused self-defense. The instruction given was not misleading or confusing, and the record shows the instruction given was an attempt to avoid any juror confusion. Although we do not consider it to be a model instruction, we conclude the district court's modified instruction for self-defense after provocation

was not obvious error. *State v. Starke,* 2011 ND 147, ¶ 12, 800 N.W.2d 705.

2

[¶ 17] Next Estrada argues the jury was not appropriately informed of the State's burden to disprove justified self-defense and excused self-defense individually in its nonexistence of defense and essential elements of offense instructions.

[¶ 18] The district court gave the following nonexistence of defense instruction:

Evidence has been presented that the Defendant acted in self-defense. The State must prove, beyond a reasonable doubt, as an additional element of the offense charged, that the Defendant was not acting in self-defense. The defendant does not have the burden of proof as to this defense. If the State has failed to prove, beyond a reasonable doubt, that the Defendant did not act in self-defense, the defendant is entitled to a verdict of not guilty.

Estrada argues no specific element informing the jury that it is the State's burden to show he did not act in excused self-defense was included in the district court's instructions. Jury instructions, however, are read as a whole. *Smith,* 1999 ND 109, ¶ 22, 595 N.W.2d 565. The district court's nonexistence of defense instruction appropriately instructed the jury that it is the State's burden to show Estrada did not act in self-defense. The instruction does not differentiate between justified self-defense or excused self-defense, nor does it refer to one or the other. The district court's jury instructions, when read as a whole, fairly advised the jury of the law on the essential issues of the case, and the court was not required to instruct the jury in the exact language requested. *Starke,* 2011 ND 147, ¶ 12, 800 N.W.2d 705. There was no obvious error.

[¶ 19] Estrada also argues the district court failed to give a proper instruction for limits on use of excessive or deadly force. Citing *State v. Jacob,* 222 N.W.2d 586, 589 (N.D.1974), Estrada argues the district court's limits on use of excessive or deadly force instruction was incomplete and did not inform the jury that it "should find that excessive force was used only if they found that defendant used a greater force than the defendant reasonably believed to be necessary." The district court gave the following instruction for limits on use of excessive or deadly force:

A person may not use more force than is necessary and appropriate under the circumstances. Deadly force may be used in lawful self-defense, or in lawful defense of others, and the force is necessary to protect the actor, or anybody else, against death, serious bodily injury, or commission of a felony involving violence. The use of deadly force may not be used if it can be avoided with safety to the actor and others by retreat or other conduct involving minimal interference with the freedom of the person menaced. Deadly force may not be used unless the person honestly and reasonably believed that safe retreat from the attacker was not possible.

[¶ 20] The jury was also given a reasonableness of accused's belief instruction. The district court told the jury, "The defendant's conduct is to be judged by what the defendant, in good faith, honestly believed, and had reasonable grounds to believe, was necessary to avoid apprehended death or great bodily injury." Estrada concedes the district court's addition of the reasonableness of accused's belief instruction likely invalidates any reversible error in regard to the limits on use of excessive or deadly force instructions because jury instructions are read as a whole.

[¶ 21] Because jury instructions are read as a whole, we conclude Estrada has failed to establish obvious error. *See Smith,* 1999 ND 109, ¶ 22, 595 N.W.2d 565. *Compare State v. Olander,* 1998 ND 50, ¶ 22, 575 N.W.2d 658 (the trial court's failure to give any self-defense instruction was obvious error).

**B**

[¶ 22] Estrada argues the district court erred by omitting the word "particular" from its jury instruction for reckless endangerment, thus resulting in an impermissibly overbroad instruction to the jury. Estrada did not object to the jury instruction at trial, so the obvious error standard again applies. *See State v. Kensmoe,* 2001 ND 190, ¶ 21, 636 N.W.2d 183.

[¶ 23] Section 12.1–17–03, N.D.C.C., in defining reckless endangerment, provides, in relevant part: "There is risk within the meaning of this section if the potential for harm exists, whether or not a *particular* person's safety is actually jeopardized." (Emphasis added.) The district court read the following instruction to the jury for both counts of reckless endangerment:

A person who creates a substantial risk of serious bodily injury or death to another human being under circumstances manifesting extreme indifference to the value of human life is guilty of Reckless Endangerment. There is risk if the potential for harm exists, whether or not a person's safety is actually jeopardized.

Additionally, under its instruction for essential elements of the case, the district court provided, "On or about June 5, 2011, in Cass County, North Dakota, the defendant, Felipe Estrada, created a substantial risk of serious bodily injury or death to members of the public."

[¶ 24]   In reference to a district court's omission of the word "particular," this Court held, in *State v. Hanson*, 256 N.W.2d 364, 368 (N.D.1977):

> We believe, however, that the meaning of the language is apparent. It is designed to apply to situations where a group of persons, not individually identified, is endangered, as by driving upon a crowded sidewalk. In that situation, the State need not prove that any one "particular person" on the sidewalk was endangered. It is sufficient if the State proves that one or more persons in the group were endangered.

Estrada cites *State v. Jaster*, 2004 ND 223, ¶ 23, 690 N.W.2d 213, in which this Court said, "The omission of the term 'particular' could lead a jury to believe it is irrelevant whether a person's safety is actually jeopardized or endangered," and concluded the "omission of the word 'particular' from the pattern jury instruction's definition of reckless endangerment renders that part of the instruction erroneous." We concluded in *Jaster*, however, though the part of the instruction standing alone was erroneous, the instruction as a whole appropriately informed the jury of the applicable law. *Jaster*, at ¶ 24. We held:

> The "ESSENTIAL ELEMENTS OF OFFENSE" part of the instruction made reference to a "particular person" by requiring the jury to find beyond a reasonable doubt that Jaster "created a substantial risk of serious bodily injury or death to a Crosby Police Officer." Consequently, the jury nevertheless was required to find that at least one Crosby police officer was endangered or jeopardized. Under these circumstances, we conclude the instruction, although erroneous in part, adequately and correctly informed the jury of the applicable law.

*Id.*

[¶ 25]   Estrada argues "members of the public" is overbroad and does not re-quire the jury to find at least one individual was in jeopardy. The district court's jury instruction specified, in the essential elements of offense portion, that the State show Estrada "created a substantial risk of serious bodily injury or death to members of the public." As the State points out in its brief, the members of the public language directly correlates to the State's amended information charging Estrada with reckless endangerment where it states Estrada "willfully discharge[d] a handgun in the parking lot of the West Acres Theater where members of the public were located and toward the theater building . . . ." Members of the public visiting the movie theater, as well as a movie theater employee, testified at trial. In a different case with different facts, an instruction including "members of the public" may be overbroad, but in this particular instance, the jury was not likely confused as to whom the district court's instruction was referencing. Though the jury instruction for reckless endangerment did not include the word "particular," the instruction, when read as a whole, was not "misleading or confusing" and fairly advised the jury of the law on the essential issues of the case. *State v. Starke*, 2011 ND 147, ¶ 12, 800 N.W.2d 705; *State v. Jaster*, 2004 ND 223, ¶ 23, 690 N.W.2d 213.

[¶ 26]   We conclude the district court's reckless endangerment jury instruction was not obvious error.

C

[¶ 27]   Estrada argues the State's improper leading questions and statements were prosecutorial misconduct and the district court abused its discretion by allowing the misconduct.

[¶ 28]   In a prosecutorial misconduct analysis, we have said:

We first determine whether the prosecutor's actions were misconduct and, if they were, then we examine whether the misconduct had prejudicial effect. To determine whether a prosecutor's misconduct rises to a level of a due process violation, we decide if the conduct, in the context of the entire trial, was sufficiently prejudicial to violate a defendant's due process rights.... Our review is limited to determining if the prosecutor's conduct prejudicially affected the defendant's substantial rights, so as to deprive the defendant of a fair trial. *State v. Vondal,* 2011 ND 186, ¶ 12, 803 N.W.2d 578 (internal citations and quotations omitted).

■■■■■ [¶ 29] Rule 611(c) of the North Dakota Rules of Evidence provides:

Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony.... Whenever a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

A district court has "wide discretion over the mode and order of interrogating witnesses and presenting evidence, and the trial court's ruling in that respect will not be disturbed on appeal unless the record establishes that the discretion was abused to the prejudice of the defendant." *State v. Jenkins,* 326 N.W.2d 67, 70 (N.D.1982). "It is often necessary to resort to leading questions in order to elicit facts from a witness, who, because of hostility, ignorance, diffidence or other reasons will not or cannot give fair and full answers.... If the record shows that the circumstances did not in fact justify the departure from the rule, and the violation of the rule is such that prejudice to the objecting party may be reasonably inferred, the appellate court will not hesitate to reverse on that

ground." *Powers v. Martinson,* 313 N.W.2d 720, 729 (N.D.1981) (quoting *State v. Hazlett,* 14 N.D. 490, 105 N.W. 617, 618 (1905)).

[¶ 30] In this case, Estrada argues the following line of the State's questioning of Stodola was leading and the trial court erred in allowing it:

Q: Do you remember telling them Estrada asked you if this was what you wanted?

MR. MOTTINGER: Objection. Leading.

THE COURT: For the State of North Dakota, the position of the state.

MS. SCHMITZ OLSON: It was a previous statement given by the witness, Your Honor. I'm asking her if she remembers making that statement.

THE COURT: The same objection, Mr. Mottinger?

MR. MOTTINGER: The same objection. She said she doesn't remember.

THE COURT: Your initial objection was leading.

MR. MOTTINGER: Yes.

THE COURT: What's your objection?

MR. MOTTINGER: And hearsay. She's asking her to repeat what somebody else told her.

THE COURT: The objection—

MS. SCHMITZ OLSON: Your Honor, I'd just like to add that if it's the defendant's statement, that objection isn't applicable.

THE COURT: The Court being fully advised on the premises, the question is, by definition, not hearsay under North Dakota law, noting the party opponent, being the defendant. The question is leading. Under these facts and circumstances, although the State did not use the magic words, the defendant will be treated as hostile by the State of North

Dakota. Pursuant to the rules, they made (sic) lead. As your question again, for the State of North Dakota.

MS. SCHMITZ OLSON: Thank you. Do you recall telling law enforcement officers that Felipe said, "Is this what you wanted?"

A: I don't remember now.

Q: Do you remember telling law enforcement at that time anything else?

A: About the phone call?

Q: Correct.

A: No.

Q: Do you remember telling law enforcement that Felipe said, "Because I'm sick of that"—excuse my language— "mother fucker. And if he's not dead, I'm going to get people from Mexico to come up and kill him"?

A: I don't remember that now.

Estrada argues, when the State stated, "It was a previous statement given by the witness, Your Honor," that statement lent credence to statements Stodola could not remember at trial and was a direct attack on Estrada's case theory. At trial, Estrada objected to this questioning, but the district court declared Stodola a hostile witness as permitted under N.D.R.Ev. 611(c). The State argues Stodola did not have any problems remembering answers to questions unrelated to this exchange, and citing *State v. Kruckenberg*, 2008 ND 212, ¶ 20, 758 N.W.2d 427, argues the prosecutor's conduct in the context of the entire trial was not sufficiently prejudicial.

[¶ 31] The State argues the leading questions asked related to whether Estrada admitted intent to kill Garza in a phone call to Stodola. We agree. The State appropriately points out the jury found Estrada guilty of the lesser offense of aggravated assault and not attempted murder. Stodola's lack of recollection was not ultimately relied upon, and the leading questions did not afford any prejudicial evidence.

[¶ 32] We conclude, because the State was attempting to elicit facts from a witness who would not give fair and full answers and the court declared her to be a hostile witness, it was justified in departing from the rule, it was not misconduct, and the district court did not abuse its discretion. *Powers*, 313 N.W.2d at 729.

D

[¶ 33] Estrada argues there was insufficient evidence to sustain a conviction for aggravated assault and reckless endangerment. We held, in *State v. Huether*, 2010 ND 233, ¶ 20, 790 N.W.2d 901:

> In reviewing challenges to the sufficiency of the evidence, we view the evidence and reasonable inferences in the light most favorable to the verdict. A conviction rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor. In reviewing challenges to the sufficiency of the evidence, we do not reweigh conflicting evidence, nor judge the credibility of witnesses.

(Internal citations and quotations omitted.)

1

[¶ 34] Estrada specifically argues there was insufficient evidence to sustain a guilty verdict for aggravated assault because Roskom was the initial aggressor and Estrada acted in self-defense. Estrada testified Roskom hit him with his car and subsequently attacked him. The record shows, however, this was after Estrada had shot at Garza. Roskom testified he and Estrada were involved in a fight that

resulted in Estrada's striking Roskom with his gun, causing Roskom's skull to be broken. The district court also read the jury an aggravated assault instruction, which included the element, "The defendant did not act in self-defense." A doctor testified Roskom had multiple significant skull fractures. Whether Roskom was the initial aggressor or not, there is sufficient evidence in the record to show an aggravated assault. We will not "reweigh conflicting evidence, nor judge the credibility of witnesses," and conclude there was sufficient evidence for a reasonable person to find Estrada guilty beyond a reasonable doubt. *See Huether,* 2010 ND 233, ¶ 20, 790 N.W.2d 901.

2

[¶ 35] Estrada also argues there was insufficient evidence to sustain a guilty verdict for reckless endangerment and to show he manifested extreme indifference to the value of human life, because Garza was his only target in the shooting. Our review of the record, however, shows otherwise. Estrada fired ten bullets from his gun, hitting Garza with six of them. At least one bullet shattered a window of the movie theater. Additionally, Stodola testified she felt a bullet go by her head so closely she could taste gunpowder in her mouth. Estrada's errant gunfire shows an extreme indifference to the value of human life.

3

[¶ 36] Viewed in the light most favorable to the verdict, we conclude the evidence is sufficient to support the guilty verdicts. *Huether,* 2010 ND 233, ¶ 20, 790 N.W.2d 901.

III

[¶ 37] We affirm the judgment.

[¶ 38] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.